Bernstein, J.
**237 In these consolidated cases, the individual plaintiffs[1] were elderly women receiving long-term care in nursing homes. In each case, the plaintiff, an "institutionalized spouse,"[2] began receiving long-term care *574 at a nursing home at her own expense. One **238 to two months later, each plaintiff's husband, a "community spouse,"[3] created an irrevocable trust that was solely for his own benefit. Such a trust is commonly called a "solely for the benefit of," or "SBO," trust.[4] The couples then transferred a majority of their individual and marital property to each SBO trust or its trustee, giving up any claim of title to that property. Distributions or payments from each SBO trust were to be made on an actuarially sound basis and solely to or for the benefit of the community spouse. The actuarially sound distribution schedule required that each trustee distribute the income and resources held by the trust to each community spouse at a rate that would deplete the trust within the community spouse's expected lifetime. A short time after each SBO trust was formed, each institutionalized spouse applied for Medicaid benefits. The Department of Health and Human Services[5] **239 and its director (collectively, the Department) determined that the entire value of the principal of each SBO trust was a countable asset for the purpose of determining each institutionalized spouse's eligibility for Medicaid benefits. Thus, the Department concluded that each institutionalized spouse did not show the requisite financial need because the value of the trust assets put their countable resources above the monetary threshold, and it denied each application.
In each case, the plaintiff unsuccessfully contested the Department's decision in an administrative appeal, but each decision was then reversed on appeal in the circuit court. On appeal in the Court of Appeals, all three cases were consolidated, and the Department's denial decisions were reinstated in a published opinion.
With the cases having been appealed in this Court, we conclude that the Court of Appeals erred in its interpretation of the controlling federal statutes, which caused the Court of Appeals to improperly reinstate the Department's denial decisions. As explained in this opinion, the fact that an irrevocable trust, which includes former assets of an institutionalized spouse, can make payments to a community spouse does not automatically render the assets held by the trust countable for the purpose of an institutionalized spouse's initial eligibility determination. See 42 U.S.C. 1396p(d)(3)(B) ; 42 U.S.C. 1396r-5(c)(2). Accordingly, we reverse the judgment of the Court of Appeals. Because the administrative *575 hearing decision in each case suffered from the same faulty reasoning used by the Court of Appeals, this legal error may have caused the administrative law judges (ALJs) to forgo a more thorough review of the Medicaid applications at issue or to disregard other avenues of legal analysis. Therefore, rather than order that the Medicaid applications be approved at this time, **240 we vacate the hearing decision of the ALJ in each case and remand these cases to the appropriate administrative tribunal for any additional proceedings necessary to determine the validity of the Department's decision to deny plaintiffs' Medicaid applications.[6]
I. FACTS AND PROCEDURAL HISTORY
This appeal involves three cases that have been consolidated for the purpose of appellate review. In Docket No. 156132, Mary Ann Hegadorn (Mrs. Hegadorn) began receiving long-term care at the MediLodge Nursing Home in Howell, Michigan, on December 20, 2013. Approximately one month later, her husband, Ralph D. Hegadorn (Mr. Hegadorn), established the "Ralph D. Hegadorn Irrevocable Trust No. 1 (Sole Benefit Trust)." (Hegadorn Trust). Mr. Hegadorn is the beneficiary of the Hegadorn Trust, and neither he nor his wife is the trustee or successor trustee. Section 2.2 of the Hegadorn Trust states that the "Trustee shall distribute the Resources of the Trust at a rate that is calculated to use up all of the Resources during" Mr. Hegadorn's expected lifetime, and it includes a suggested distribution schedule that is based on the Department's policies. The Hegadorn Trust also lists another trust as a possible residual beneficiary, stating:
At my death, if my Spouse is surviving, Trustee shall distribute the remaining trust property to the trustee of the Special Supplemental Care Trust for Mary Ann Hegadorn, created by my Will dated the same day as this **241 Agreement, as my Will may be amended from time to time. [Hegadorn Trust, § 3.3 (formatting altered).]
On April 24, 2014, Mrs. Hegadorn applied for Medicaid benefits. The Department subsequently denied Mrs. Hegadorn's application, determining that her countable assets, including the assets that were placed in the Hegadorn Trust, exceeded the applicable financial eligibility limit.
In Docket No. 156133, Dorothy Lollar (Mrs. Lollar) began receiving long-term care at the MediLodge Nursing Home in Howell, Michigan, on May 1, 2014. Approximately a month and a half later, Mrs. Lollar's husband, Dallas H. Lollar (Mr. Lollar), established the "Dallas H. Lollar Irrevocable Trust" (Lollar Trust), which provided that it was intended to "be a 'Solely for the Benefit of' trust." Mr. Lollar is the beneficiary of the Lollar Trust, and neither he nor his wife is the trustee or successor trustee. Section 2.2 of the Lollar Trust states that the Trustee "shall ... pay or distribute" to Mr. Lollar, "or for [his] sole benefit, during [his] lifetime such part or all of the net income and principal" of the Trust "as Trustee determines is necessary to distribute the resources in [sic] an actuarially sound basis ...." The Lollar Trust also lists another trust as a possible residual beneficiary, stating that in the event of Mr. Lollar's *576 death, he "give[s] all the rest, residue and remainder of this Sole Benefit Trust to the Dallas H. Lollar Revocable Trust Agreement U/A/D June 19, 2014, and administered according to the terms of that Agreement." Lollar Trust, § 3.2b (formatting altered). On July 21, 2014, Mrs. Lollar applied for Medicaid benefits. The Department subsequently denied Mrs. Lollar's application, determining that her countable assets, including the assets **242 that were placed in the Lollar Trust, exceeded the applicable financial eligibility limit.
In Docket No. 156134, Roselyn Ford (Mrs. Ford) began receiving long-term care at the Saline Evangelical Nursing Home in Saline, Michigan, on December 5, 2013. About a month later, Mrs. Ford's husband, Herbert W. Ford (Mr. Ford), established the "Herbert Ford Irrevocable Trust" (Ford Trust), which provided that it was intended to be "a 'solely for the benefit of' trust." Mr. Ford is the beneficiary of the Ford Trust, and neither he nor his wife is the trustee or successor trustee. The Ford Trust also provides that the "Trustee shall ... pay or distribute to [Mr. Ford], or for [his] sole benefit, during his lifetime whatever part of the net income and principal (the Resources) of the Trust that Trustee determines is necessary to distribute the resources on an actuarially sound basis." Section 3.2 of the Ford Trust lists as possible residual beneficiaries separate trusts to be established by Mr. Ford's will for the benefit of his living children and the descendants of his deceased children. On January 30, 2014, Mrs. Ford applied for Medicaid benefits. The Department subsequently denied Mrs. Ford's application, determining that her countable assets, including the assets that were placed in the Ford Trust, exceeded the applicable financial eligibility limit.[7]
Each plaintiff timely requested an administrative hearing to contest the Department's decision. With respect to Mrs. Hegadorn's and Mrs. Lollar's cases, a consolidated hearing was held before ALJ Landis Y.
**243 Lain, who affirmed the Department's decision. With respect to Mrs. Ford's case, a hearing was held before ALJ Alice C. Elkin, who similarly affirmed the Department's decision. Each ALJ agreed with the Department that Bridges Eligibility Manual (BEM) 401 required the Department to count the assets held by each trust because the trust could make payments to the community spouse. The ALJs further concluded that this was consistent with the controlling federal statutes. The ALJs made no factual findings and rendered no conclusions of law regarding possible payments to the trusts that are listed as residual beneficiaries in the SBO trusts.
The plaintiff in each case appealed in the appropriate circuit court and, in each case, the circuit court reversed the ALJ's decision. The Department appealed each circuit court decision in the Court of Appeals, which consolidated the cases. In a published opinion, the panel reversed the circuit courts and reinstated the ALJs' decisions to deny benefits. Plaintiffs timely sought leave to appeal in this Court. We granted plaintiffs' application in an order entered March 7, 2018, stating:
The parties shall include among the issues to be briefed whether: (1) the Court of Appeals clearly erred in holding that the trust assets of the plaintiffs' spouses and decedent Lollar's spouse are "countable assets" for purposes of Medicaid *577 eligibility; and (2) the Department of Health and Human Services could base its decision on the retroactive application of a department policy adopted more than 45 days after the plaintiffs' applications were filed. [ Hegadorn v. Dep't of Human Servs. Dir. , 501 Mich. 984, 907 N.W.2d 578 (2018).]
II. STANDARD OF REVIEW
Resolution of this appeal turns on whether the federal Medicaid statutes, which govern certain aspects of the Department's Medicaid policies, allow the **244 Department to count the assets held in a community spouse's SBO trust in determining an institutionalized spouse's eligibility for Medicaid. Final agency decisions are subject to judicial review pursuant to the Michigan Constitution, see Const. 1963, art. 6, § 28, and the Administrative Procedures Act (APA), MCL 24.201 et seq . The Michigan Constitution provides:
All final decisions ... of any administrative officer or agency ... which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions ... are authorized by law .... [ Const. 1963, art. 6, § 28.]
The APA provides that, unless a different scope of review is established by law,
the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
(a) In violation of the constitution or a statute.
* * *
(f) Affected by other substantial and material error of law. [ MCL 24.306(1).]
The APA further instructs that "[t]he court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings." MCL 24.306(2).
An administrative agency's interpretation of a statute that it is obligated to execute is entitled to "respectful consideration," but it "cannot conflict with the plain meaning of the statute." In re Rovas Complaint Against SBC Mich. , 482 Mich. 90, 108, 754 N.W.2d 259 (2008). We **245 review issues of statutory interpretation de novo. Walters v. Nadell , 481 Mich. 377, 381, 751 N.W.2d 431 (2008). "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." South Dearborn Environmental Improvement Ass'n, Inc. v. Dep't of Environmental Quality , 502 Mich. 349, 360-361, 917 N.W.2d 603 (2018). When interpreting federal statutes, we strive to "give effect to the will of Congress[.]" Walters , 481 Mich. at 381, 751 N.W.2d 431 (quotation marks and citations omitted.)
This case also requires us to construe language in trust documents. The proper construction of a trust, like the construction of a will, is a question of law subject to de novo review. See In re Raymond Estate , 483 Mich. 48, 53, 764 N.W.2d 1 (2009). Our goal in interpreting trust language is to determine and give effect to the trustor's intent. Id . at 52, 764 N.W.2d 1. We begin by examining the language of the trust itself, and, if there is no ambiguity, we interpret it according to its plain and ordinary meaning. Id . ; In re Maloney Trust , 423 Mich. 632, 639, 377 N.W.2d 791 (1985).
III. ANALYSIS
A. OVERVIEW OF MEDICAID
The Medicaid program is governed by a complex web of interlocking statutes, as *578 well as regulations and interpretive documents published by state and federal agencies. The program was created by Title XIX of the Social Security Act of 1965, PL 89-97 ; 79 Stat. 343, codified at 42 U.S.C. 1396 et seq . Medicaid is generally a need-based assistance program for medical care that is funded and administered jointly by the federal government and individual states. **246 Ketchum Estate v. Dep't of Health & Human Servs. , 314 Mich. App. 485, 488, 887 N.W.2d 226 (2016). At the federal level, the program is administered by the Secretary of Health and Human Services through the Centers for Medicare & Medicaid Services (CMS). The State Medicaid Manual is published by CMS to help guide states in their administration of the program, including how to determine an applicant's eligibility for benefits. See Ark. Dep't of Health & Human Servs. v. Ahlborn , 547 U.S. 268, 275, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). " 'Each participating State develops a plan containing reasonable standards ... for determining eligibility for and the extent of medical assistance' within boundaries set by the Medicaid statute and Secretary of Health and Human Services." Wis. Dep't of Health & Family Servs. v. Blumer , 534 U.S. 473, 479, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002), quoting Schweiker v. Gray Panthers , 453 U.S. 34, 36-37, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). "In formulating those standards, States must 'provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant.' " Blumer , 534 U.S. at 479, 122 S.Ct. 962, quoting 42 U.S.C. 1396a(a)(17)(B).
Medicaid benefits are provided automatically for the "categorically needy," meaning persons who receive welfare payments through Aid to Families with Dependent Children (AFDC), 42 U.S.C. 601 et seq ., or Supplemental Security Income (SSI), 42 U.S.C. 1382 et seq .[8] See **247 42 U.S.C. 1396a(a)(10)(A) ; Social Security Administration, Program Operations Manual System (SSA POMS ), SI 01715.020 (August 2, 2016), available at < https://secure.ssa.gov/apps10/poms.nsf/lnx/0501715020> (accessed May 2, 2019) [https://perma.cc/E6Q9-WSMB]. Congress has also enacted an optional program, in which states may elect to participate, for those who are deemed "medically needy." Ark. Dep't of Human Servs. v. Schroder , 353 Ark. 885, 890, 122 S.W.3d 10 (2003) ; 42 U.S.C. 1396a(a)(10)(A)(ii). Although medically needy individuals meet the nonfinancial requirements under either the AFDC or the SSI programs, they become eligible for Medicaid benefits only when their incomes and assets are reduced below certain established levels. See 42 U.S.C. 1396a(a)(10)(C) ; 42 CFR 435.301(b)(2) and (3) (2018) ; 42 CFR 435.320 (2018). Michigan has elected to include this optional coverage for the medically needy in its state Medicaid plan. Therefore, Michigan must comply with the requirements imposed by the federal Medicaid statutes. *579 See In re Rasmer Estate , 501 Mich. 18, 25, 903 N.W.2d 800 (2017) ; 42 U.S.C. 1396a. Plaintiffs here fall within the medically needy category for those over the age of 65. Therefore, to be eligible for Medicaid benefits, they were required to reduce their countable incomes and assets to or below $ 2,000. See Mackey v. Dep't of Human Servs. , 289 Mich. App. 688, 698, 808 N.W.2d 484 (2010) ; BEM 400 (July 1, 2014), p. 7; BEM 402 (April 1, 2014), p. 4.
As the United States Supreme Court has noted, "[b]ecause spouses typically possess assets and income jointly and bear financial responsibility for each other, Medicaid eligibility determinations for married applicants **248 have resisted simple solutions." Blumer , 534 U.S. at 479, 122 S.Ct. 962. Prior to 1988, to become eligible for Medicaid benefits, a married individual who was admitted to a nursing home was required to "spend down" all the assets jointly held with his or her spouse who remained in the marital home. See HR Rep. No. 100-105(II), at 59, 65-67 (2d Sess. 1988), as reprinted in 1988 USCCAN 857, 881, 888-890. That changed with the enactment of the Medicare Catastrophic Coverage Act of 1988 (MCCA), codified at 42 U.S.C. 1396r-5.[9] As the Supreme Court has recently explained, the MCCA was enacted "to protect community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance," which is why "Congress installed a set of intricate and interlocking requirements with which States must comply in allocating a couple's income and resources." Blumer , 534 U.S. at 480, 122 S.Ct. 962.
Since the enactment of the MCCA, Congress has made numerous additional amendments of the Medicaid statutes to adapt the program to changing economic realities while striving to prevent abuse of the program. Many of these adjustments concern the use and evaluation of estate planning tools like trusts and annuities. The Consolidated Omnibus Budget Reconciliation Act of 1985, PL 99-272 ; 100 Stat. 82, formerly codified at 42 U.S.C. 1396a(k), instructed states to treat as countable assets the maximum amount of a trust's principal a trustee could pay to a Medicaid applicant if the trustee were to exercise his or her discretionary authority, whether or not that discretion was actually exercised. See 1 Kove & Kosakow, Irrevocable Trusts **249 (4th ed., October 2018 update), § 27:9. The Omnibus Budget Reconciliation Act of 1993 (OBRA 93), PL 103-66 ; 107 Stat. 312, repealed 42 U.S.C. 1396a(k) and replaced it with the current Medicaid trust rules. See 42 U.S.C. 1396p(d) ; 1 Irrevocable Trusts, § 27:9.[10] States that choose to participate in the Medicaid program are required to "comply with the provisions of section 1396p of [Title XIX] with respect to liens, adjustments and recoveries of medical assistance correctly paid, transfers of assets,, [sic] and treatment of certain trusts [.]" 42 U.S.C. 1396a(18) (emphasis added). As our review of these Medicaid statutes demonstrates, Congress has been particularly active in its efforts to prevent *580 spousal pauperization while at the same time limiting the ability of wealthier individuals to shelter income and assets using estate planning tools.
B. TREATMENT OF TRUST RESOURCES FOR AN INSTITUTIONALIZED SPOUSE'S INITIAL ELIGIBILITY DETERMINATION
The main issue in this appeal is whether assets making up the principal of an irrevocable SBO trust are countable assets for the purpose of determining an institutionalized spouse's initial eligibility for Medicaid. In Michigan, the Department administers the state Medicaid program. The Department's policies are contained in several publications, including the BEM , the SSA POMS , and the State Medicaid Manual .[11] A **250 person who falls in the optional medically needy category, like each plaintiff here, cannot qualify for Medicaid benefits if his or her countable assets and income exceed $ 2,000 during the period in which he or she applies for benefits. See Mackey , 289 Mich. App. at 698, 808 N.W.2d 484 ; BEM 400 at 7; BEM 402 at 4. According to BEM 401 , "[h]ow much of the principal of a trust is a countable asset depends on" "[t]he terms of the trust" and "[w]hether any of the principal consists of countable assets or countable income." BEM 401 (July 1, 2014), p. 10. With respect to irrevocable trusts, such as those at issue here, BEM 401 instructs the Department to "[c]ount as the person's countable asset the value of the countable assets in the trust principal if there is any condition under which the principal could be paid to or on behalf of the person from an irrevocable trust." Id . at 11. The legal authority for BEM 401 derives from two parts of the federal Medicaid statutes: 42 U.S.C. 1396a and 42 U.S.C. 1396p. See BEM 401 at 17-18. However, additional rules applicable only to institutionalized spouses are described in 42 U.S.C. 1396r-5. These additional rules serve as a starting point for evaluating an institutionalized spouse's eligibility for Medicaid benefits.
1. 42 U.S.C. 1396r-5
When determining an institutionalized spouse's eligibility for Medicaid benefits, a computation of the couple's total joint resources is taken "as of the beginning of the first continuous period of institutionalization, **251 " which may or may not be the same month in which one applies for benefits. 42 U.S.C. 1396r-5(c)(1)(A). The stated purpose of this first computation is to determine the amount of the "spousal share" allocated to the community spouse. 42 U.S.C. 1396r-5(c)(1)(A)(ii). The couple's resources are divided into those that are countable and those that are exempt.[12] One-half of the total value of their countable resources "to the extent either the institutionalized spouse or the community spouse has an ownership interest" is considered a spousal share. Id . *581 "The spousal share allocated to the community spouse qualifies as the [community spouse resource allowance or] CSRA, subject to a ceiling ... indexed for inflation" by Congress. Blumer , 534 U.S. at 482, 122 S.Ct. 962. The CSRA is the monetary value of assets that may be retained by or transferred to the community spouse without those resources being counted against the institutionalized spouse for his or her initial eligibility determination. See 42 U.S.C. 1396r-5(c)(2)(B) and (f) ; Blumer , 534 U.S. at 482-483, 122 S.Ct. 962. Available resources in excess of the CSRA will generally disqualify an institutionalized spouse from receiving Medicaid benefits unless they are spent down prior to filing an application. 42 U.S.C. 1396r-5(c)(2) ; Blumer , 534 U.S. at 482-483, 122 S.Ct. 962.
Once the amount of the CSRA is determined, a second calculation is required to determine the resources available to the institutionalized spouse for the purpose of determining the institutionalized spouse's initial Medicaid eligibility. 42 U.S.C. 1396r-5(c)(2). This calculation is **252 based on the resources available to the institutionalized spouse on the day that the institutionalized spouse submits his or her application for Medicaid benefits. "In determining the resources of an institutionalized spouse at the time of application for benefits ..., all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse" to the extent that they exceed the CSRA. 42 U.S.C. 1396r-5(c)(2)(A) and (B) (emphasis added). "[A]fter the month in which an institutionalized spouse is determined to be eligible for benefits ..., no resources of the community spouse shall be deemed available to the institutionalized spouse." 42 U.S.C. 1396r-5(c)(4). While the MCCA contains provisions governing the treatment of income paid from a trust, see 42 U.S.C. 1396r-5(b)(2)(B),[13] its general resource allocation provisions are silent with regard to the treatment of assets or resources held by a trust. The MCCA also does not provide a definition for the term "resources," but the term does not include those things excluded by 42 U.S.C. 1382b(a) or (d). See 42 U.S.C. 1396r-5(c)(5).
We are asked to consider whether the principal of an irrevocable trust, created using assets of both spouses but which may distribute payments only to or for the benefit of the community spouse, is a countable asset for the purpose of the institutionalized spouse's initial eligibility determination. Stated differently, is **253 the principal of the irrevocable trust a "resource[ ] held by either the institutionalized spouse, community spouse, or both," such that it is considered "available to the institutionalized spouse"? 42 U.S.C. 1396r-5(c)(2)(A).
Assuming without deciding that the principal of an irrevocable trust constitutes a resource as that term is used in 42 U.S.C. 1396r-5, such a resource is not "held by" the institutionalized or community spouse.[14] The property that makes up *582 the principal of a trust is not owned by or otherwise directly available to the beneficiary. Instead, the trustee holds title to the property that constitutes the principal of a trust and holds it in trust for the beneficiary. See MCL 700.7401 ; Equitable Trust Co. v. Milton Realty Co. , 261 Mich. 571, 577, 246 N.W. 500 (1933) (holding that "[t]o create a trust, there must be an assignment of designated property to a trustee with the intention of passing title thereto, to hold for the benefit of others").[15] The trust beneficiary, on the other hand, holds a right to "enforce the performance of the trust in equity." MCL 555.16. See also Union Guardian Trust Co. v. Nichols , 311 Mich. 107, 18 N.W.2d 383 (1945). Unless the beneficiary is also a trustee, the beneficiary does not own the property forming the principal of the irrevocable trust. If either spouse retained possession and use of trust property, **254 then the question might be closer, but that question is not raised here. In summary, the principal of an irrevocable trust generally will not be a resource available to either spouse according to 42 U.S.C. 1396r-5(c), because such property is not held by either spouse. The principal of an irrevocable trust may, however, be made legally available to an institutionalized spouse by way of the Medicaid trust rules contained in 42 U.S.C. 1396p(d).
2. 42 U.S.C. 1396p(d) : THE MEDICAID TRUST RULES
The first two paragraphs of the Medicaid trust rules describe to whom the rules apply and how to determine whether that person created a trust. Paragraph (1) of the Medicaid trust rules begins by stating, "For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such individual."[16] 42 U.S.C. 1396p(d)(1). While, generally speaking, an "individual" is "a particular being or thing," i.e., "a single human being," Merriam-Webster's Collegiate Dictionary (11th ed), the context of a term's usage in a statute affects its meaning, see South Dearborn , 502 Mich. at 361, 917 N.W.2d 603. Here, the context in which "an individual" is used limits the scope of possible human beings to which 42 U.S.C. 1396p(d)(1) refers.
Paragraph (1) provides that Subsection (d) applies to determining "an individual's eligibility for, or amount of, benefits ...." 42 U.S.C. 1396p(d)(1). Medicaid benefits are granted only to those who apply for them and who also meet the eligibility requirements. Thus, if an eligibility determination is being made, then the "individual"
**255 referred to in Paragraph (1) must be an applicant for Medicaid; similarly, language directing the reader's attention to the amount of benefits provided indicates that the "individual" is either an applicant for or a current recipient of Medicaid benefits. It follows that "an individual" in 42 U.S.C. 1396p(d)(1) is a person applying for Medicaid benefits or a person who has been approved for a yet-to-be-determined amount of benefits. Applied to the context of this appeal, the individual referred to *583 here is the institutionalized spouse, who is the Medicaid applicant. The plain language of 42 U.S.C. 1396p(d)(1) thus provides that, to determine an institutionalized spouse's eligibility for Medicaid benefits, the rules outlined in 42 U.S.C. 1396p(d)(3) govern trusts established by the institutionalized spouse.
Paragraph (2) of the same subsection provides the criteria for determining whether "an individual" has established a trust. 42 U.S.C. 1396p(d)(2). For the purposes of Subsection (d), "an individual" has
established a trust if assets[17 ] of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust other than by will:
**256 (i) The individual.
(ii) The individual's spouse.
(iii) A person, including any court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse.
(iv) A person, including any court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse. [ 42 U.S.C. 1396p(d)(2)(A).]
Therefore, when a community spouse creates a trust, other than by will, using assets of his or her institutionalized spouse, that action is legally attributed to the **257 institutionalized spouse for the purposes of the institutionalized spouse's Medicaid eligibility determination.
Deciding that an institutionalized spouse is an individual who has established a trust *584 does not, however, end the inquiry. Paragraph (2) only describes the conditions for when a Medicaid applicant is deemed to have established a trust. The rules described in Paragraph (3) govern whether the assets held by such a trust are available to the Medicaid applicant and thus countable for his or her initial eligibility determination.
3. 42 U.S.C. 1396p(d)(3)(B) : THE ANY-CIRCUMSTANCES RULE
Once it is determined that a Medicaid applicant has established a trust, the question becomes whether assets held by the trust are available to the applicant. The trust rules in 42 U.S.C. 1396p(d)(3) treat revocable trusts and irrevocable trusts differently. Generally, the principal of a revocable trust is always considered an asset available to the Medicaid applicant who formed the trust. See 42 U.S.C. 1396p(d)(3). This is unsurprising, as a trustor can typically dissolve a revocable trust and reclaim title and possession of those things held by the trust.
The rules for irrevocable trusts are more intricate. Notably, the rules do not assume that assets placed in an irrevocable trust are available to the Medicaid applicant. Instead, when assessing an irrevocable trust, the "any-circumstances rule" applies:
(i) if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual , the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual , and payments from that portion of the corpus or income- **258 (I) to or for the benefit of the individual, shall be considered income of the individual, and
(II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c); and
(ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered , as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual for purposes of subsection (c) , and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date. [ 42 U.S.C. 1396p(d)(3)(B) (emphasis added).]
Focusing on the statutory language, "any" is undefined within the statute itself, but is commonly defined as "one or some indiscriminately of whatever kind" or "one, some, or all indiscriminately of whatever quantity." Merriam-Webster's Collegiate Dictionary (11th ed.). Thus, the use of the term "any circumstances" demonstrates that we are to consider not only obvious circumstances, but also those that are hypothetical or even unlikely. However, the rule also includes key limitations. The rule instructs us to consider only possible "payments from the trust," indicating that there must be a nexus between the trust and the recipient or beneficiary of the payment. We are next told that only those payments that could be made "to or for the benefit of the individual" fall within the rule. If there are circumstances under which payments from the trust can be made to or for the benefit of the individual, then the portion of the principal of the trust from which such payments would come is deemed available to the individual, and thus countable for determining the individual's eligibility for Medicaid benefits. If no such circumstances exist, then the portion of the principal **259 derived from *585 the applicant's assets is not a countable asset for the applicant's eligibility determination. See 42 U.S.C. 1396p(c).[18]
Correctly applying the any-circumstances rule requires understanding to whom "the individual" refers in 42 U.S.C. 1396p(d)(3)(B). The Department urges us to read "the individual" as referring to anyone whose resources must be evaluated in assessing a Medicaid application, without regard to whether that person is the Medicaid applicant or the applicant's spouse. Applied here, the Department reads "the individual" as referring to the person applying for Medicaid benefits (the institutionalized spouse), the community spouse, or both. This was also the meaning adopted by the Court of Appeals. However, we conclude that this interpretation suffers from several critical flaws.
As already discussed, the context in which a statutory term is used affects its meaning. See South Dearborn , 502 Mich. at 361, 917 N.W.2d 603. As with Paragraphs (1) and (2) of 42 U.S.C. 1396p(d), the context in which "the individual" is used limits the scope of possible human beings to which 42 U.S.C. 1396p(d)(3)(B) refers. The first limitation is the use of the definite article "the" preceding "individual." This suggests that "the individual" referred to in 42 U.S.C. 1396p(d)(3)(B)(i) is a single person, as opposed to an open class of all people. See Massey v. Mandell , 462 Mich. 375, 382 n. 5, 614 N.W.2d 70 (2000) (" 'The' and 'a' have different meanings. 'The' is defined as 'definite article. 1. (used, [especially] before a noun, with a specifying or particularizing **260 effect, as opposed to the indefinite or generalizing force of the indefinite article a or an) ....' Random House Webster's College Dictionary , p. 1382.").
Additionally, Paragraph (1) of Subsection (d) begins by stating, "[f]or purposes of determining an individual's eligibility for, or amount of," Medicaid benefits, "the rules specified in paragraph (3) shall apply to a trust established by such individual ." 42 U.S.C. 1396p(d)(1) (emphasis added). As discussed in Part III(B)(2) of this opinion, Paragraph (1) uses "an individual" to refer to a person applying for Medicaid benefits or a person who qualifies for benefits, but the amount of those benefits must be determined.[19] Paragraph (1) then states that Paragraph (3) applies to a trust established by that applicant or recipient. Thus, while "an individual" in Paragraph (1) can be read as referring to a potential class of persons, when "such individual" establishes a trust, that class is reduced to a single person for the purposes of Paragraph (3). Paragraph (2) of Subsection (d) also refers to "an individual" when describing whether such individual established a trust, and it contrasts that term with "the individual's spouse." 42 U.S.C. 1396p(d)(2)(A)(i) and (ii).
Reading these provisions together, it follows that when Paragraph (3) refers to "the individual," it is referring to the same individual whose eligibility for, or amount of, benefits is being determined and who has established a trust under Paragraph (2): the applicant for or recipient of Medicaid benefits. When considering **261 the eligibility *586 of an institutionalized spouse for Medicaid benefits, "the individual" must be read as referring to the institutionalized spouse to the exclusion of the community spouse, who, by definition, is not applying for or receiving Medicaid benefits.[20]
We find further support for this reading by reference to markedly different language in the rules governing trusts under the SSI program. See 42 U.S.C. 1382b(e)(2) and (3). The SSI program contains a nearly identical any-circumstances rule with one key difference: it explicitly differentiates between the individual and the individual's spouse. See 42 U.S.C. 1382b(e)(3)(B) ("[I]f there are any circumstances under which payment from the trust could be made to or for the benefit of the individual (or of the individual's spouse ) ....") (emphasis added). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States , 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed. 2d 17 (1983) (quotation marks and citation omitted). See also Farrington v. Total Petroleum, Inc. , 442 Mich. 201, 210, 501 N.W.2d 76 (1993) ("Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there."). When Congress intended a provision of the Medicaid or SSI statutes to apply to both the applicant and the **262 applicant's spouse, it has stated so expressly. Moreover, the Medicaid trust rules in 42 U.S.C. 1396p(d) were added by OBRA 93, six years before Congress added the SSI trust rules in 42 U.S.C. 1382b(e) with the Foster Care Independence Act of 1999, PL 106-169 ; 113 Stat. 1822. Had Congress intended the two rules to operate identically, as the Department suggests, then Congress likely would have used identical language in both 42 U.S.C. 1396p(d)(3)(B) and 42 U.S.C. 1382b(e)(3)(B).[21]
Reading "the individual" in this manner and in the context of this appeal, *587 42 U.S.C. 1396p(d)(3)(B) refers only to an institutionalized spouse and not a community spouse. As BEM 401 is based primarily on 42 U.S.C. 1396p(d)(3)(B) and incorporates the any-circumstances rule into Michigan's Medicaid policies, this same restriction applies to BEM 401 , despite the use of the term "person" in place of "individual." The any-circumstances rule, therefore, makes assets held by an irrevocable **263 trust available to an institutionalized spouse if there are any circumstances, whether likely or hypothetical, under which the trust could make a payment to or for the benefit of the institutionalized spouse. If an irrevocable trust can make payments only to the community spouse, then those payments will satisfy the any-circumstances rule only if there is evidence that the payments could be for the benefit of the institutionalized spouse.[22] If application of 42 U.S.C. 1396p(d)(3)(B) makes assets held by an irrevocable trust available to an institutionalized spouse, then the value of such assets is countable for the purposes of 42 U.S.C. 1396r-5(c).
There is no inconsistency created by our reading of 42 U.S.C. 1396r-5 and 42 U.S.C. 1396p(d), and therefore the preemptive provision of 42 U.S.C. 1396r-5(a)(1) does not apply.[23] As discussed before, the general resource-allocation rules of 42 U.S.C. 1396r-5(c), on their own, do not treat assets held by a trust as a resource available to either spouse. If a resource is not available to either spouse, then it is not a countable asset for the purpose of an institutionalized spouse's initial eligibility determination.
**264 See 42 U.S.C. 1396r-5(c)(2). The specific provisions governing the treatment of trusts in 42 U.S.C. 1396p(d) make the vast majority of assets held by a trust created by an institutionalized spouse available to that spouse by operation of law, while leaving open the possibility that some such assets will remain legally unavailable. The general provisions of 42 U.S.C. 1396r-5 can therefore be read in harmony with the specific provisions of 42 U.S.C. 1396p(d), and no inconsistency exists. See People v. Calloway , 500 Mich. 180, 185-186, 895 N.W.2d 165 (2017) ("[W]hen a statute contains a general provision and a specific provision, the specific provision controls."); People v. Mazur , 497 Mich. 302, 313, 872 N.W.2d 201 (2015) ("Under the [in pari materia ] doctrine, statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law.").
In summary, the principal of an irrevocable trust formed solely for the benefit of a community spouse is not per se a "resource available" to an institutionalized spouse under 42 U.S.C. 1396r-5(c)(2) for the purpose of determining an institutionalized spouse's eligibility for Medicaid benefits. Assets making up the principal of such a trust are not automatically considered countable assets for Medicaid eligibility *588 determinations. However, the principal of an irrevocable trust may become a resource available to an institutionalized spouse, and thus a countable asset, if the following conditions are met: (1) assets of the institutionalized spouse are used to form the principal of the trust, 42 U.S.C. 1396p(d)(2)(A) ; (2) the institutionalized spouse, his or her spouse, or one of the other entities listed under 42 U.S.C. 1396p(d)(2)(A)(i) through (iv) established the trust using a means other than a will; and (3) there are "any circumstances under which payment **265 from the trust could be made to or for the benefit of" the institutionalized spouse, 42 U.S.C. 1396p(d)(3)(B)(i).
IV. APPLICATION
To determine whether the SBO trusts at issue allow for a payment to be made "to or for the benefit of" the institutionalized spouses, we must look to the language of the trust documents themselves. 42 U.S.C. 1396p(d)(3)(B) ; BEM 401 at 10. If the principal of each SBO trust at issue is rightly considered to be a countable asset, the Department properly denied plaintiffs' applications. However, if the Department has deemed, as countable assets, property that the federal statutes do not consider available to plaintiffs, then the Department's decisions are contrary to law.
It is undisputed that each plaintiff is an individual whose eligibility for Medicaid benefits is being determined under 42 U.S.C. 1396p(d)(1). It is also undisputed that, in each case, assets of the institutionalized spouse were used to establish the SBO trusts. Accordingly, the institutionalized spouses in these cases are individuals who have established a trust pursuant to 42 U.S.C. 1396p(d)(2). The SBO trusts at issue are irrevocable trusts, meaning the principal of each trust is not automatically rendered available to the institutionalized spouse. 42 U.S.C. 1396p(d)(3)(A) and (B). Furthermore, the property and income that make up the principal of the SBO trusts at issue are not held by the institutionalized spouses or the community spouses. Rather, title to the property that is now the principal of each trust was transferred to the trust or trustee, and the money that forms part of the principal was moved into bank accounts controlled by the trustee. There also has been no suggestion that the community spouses retain possession of the tangible property that forms the principals **266 of the trusts. Therefore, the principals of the SBO trusts are not automatically considered resources available to any of the spouses under 42 U.S.C. 1396r-5(c). Accordingly, the principal of each SBO trust can be considered a resource available to the institutionalized spouse, and thus a countable asset, only if made so by operation of the any-circumstances rule in 42 U.S.C. 1396p(d)(3)(B).
As the Court of Appeals correctly noted, each of the SBO trusts at issue instructs the trustee to "use up" or deplete the entirety of the principal during the community spouse's lifetime. All three SBO trusts also include language instructing the trustees to distribute the assets "on a[n] actuarially sound basis," which means that the "spending must be at a rate that will use up all the resources during the person's lifetime." BEM 405 (July 1, 2014), p. 12. However, the Court of Appeals erroneously concluded that, because the community spouses could be paid by the trusts, this automatically created a " 'condition under which the principal could be paid to or on behalf of the person from an irrevocable trust,' " meaning that "the assets in each trust were properly determined to be countable assets by the Department. BEM 401 at 12." Hegadorn v. Dep't of Human Servs. Dir. , 320 Mich. App. 549, 563-564, 904 N.W.2d 904 (2017). The Court of Appeals read the word "person" in BEM 401 *589 as referring to both the applicants and their spouses in all circumstances. As already discussed, the rule in BEM 401 is derived from 42 U.S.C. 1396a and the any-circumstances rule in 42 U.S.C. 1396p(d)(3)(B). The any-circumstances rule makes assets in an irrevocable trust available to a Medicaid applicant only if there are circumstances under which "a payment from the trust" could be made "to or for the benefit of" the applicant. 42 U.S.C. 1396p(d)(3)(B). The Department's contrary interpretation **267 and application of BEM 401 , which incorporates the federal any-circumstances rule into Michigan's Medicaid policies, is not entitled to respectful consideration because it is foreclosed by the text of 42 U.S.C. 1396p(d)(3)(B). See Rovas , 482 Mich. at 108, 754 N.W.2d 259.
In determining whether payments can be made from a trust to an individual or for the individual's benefit, CMS instructs the Department to "take into account any restrictions on payments, such as use restrictions, exculpatory clauses, or limits on trustee discretion that may be included in the trust." CMS, State Medicaid Manual , § 3259.6(E) (rev. 64), p. 3-3-109.30. The SBO trusts at issue all contain language stating that distributions or payments from the trust may only be made to or for the benefit of the respective community spouse and that the trust resources may be used only for the community spouse's benefit .[24] The ALJs and the Court of Appeals recognized this but erred by concluding that payments to or for the benefit of the community spouses were available to the institutionalized spouses. Because the community spouses are not themselves applying for or receiving Medicaid benefits, they are not "the individual" referred to in 42 U.S.C. 1396p(d)(3)(B).[25] Thus, the Court of Appeals erred by **268 holding that the possibility of a distribution from each SBO trust to each community spouse automatically made the assets held by each SBO trust countable assets for the purposes of the respective institutionalized *590 spouses' initial eligibility determination.[26] Accordingly, we reverse the Court of Appeals judgment because it was premised on an incorrect reading of the controlling statutes and thus was contrary to law. It follows that the ALJs' decisions are also contrary to law and cannot stand, given that they all suffer from **269 the same faulty reasoning employed by the Court of Appeals. See MCL 24.306(1)(a) and (f).
The question now becomes what relief should be granted. The APA gives this Court some discretion in crafting relief that is appropriate to each case arising from an administrative appeal. See MCL 24.306(2) ("The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings."). The sheer complexity of the Medicaid program and the Department's legitimate concerns about potential abuse are paramount considerations in determining what relief is warranted. We further note that, given the reasoning employed in resolving the administrative appeals, the ALJs may have forgone consideration of alternative avenues of legal analysis. In light of these concerns, we decline to order that the Department approve plaintiffs' Medicaid applications at this time. Instead, we vacate the final administrative hearing decision in each case and remand each case to the appropriate administrative tribunal for the proper application of the any-circumstances test. If the ALJs determine that circumstances exist under which payments from the trusts could be made to or for the benefit of the institutionalized spouse, then the ALJs should explain this rationale and affirm the Department's decision. However, if no such circumstances exist, the ALJs should reverse the Department's decisions and order that the Medicaid applications be approved.
V. CONCLUSION
Neither 42 U.S.C. 1396r-5 nor 42 U.S.C. 1396p(d) automatically makes marital assets placed in an irrevocable trust for the sole benefit of a community spouse countable assets for the purpose of an institutionalized **270 spouse's initial eligibility determination. Rather, such assets become countable only if circumstances exist under which the trust could make a payment to or for the benefit of the institutionalized spouse. Accordingly, we reverse the judgment of the Court of Appeals.
Because the ALJs' decisions were largely grounded in the same flawed legal reasoning that was employed by the Court of Appeals, we vacate the final hearing decision of the ALJ in each case. We remand all three cases for any additional administrative proceedings necessary to evaluate the legal validity of the Department's decision to deny each plaintiff's Medicaid application. See MCL 24.306(2). We do not retain jurisdiction.
McCormack, C.J., and Markman, Zahra, Viviano, and Clement, JJ., concurred with Bernstein, J.

The original plaintiffs, Mary Hegadorn, Dorothy Lollar, and Roselyn Ford, are now deceased, and the personal representatives of their respective estates have continued this action on their behalf. For ease of reference, this opinion will use "plaintiffs" to refer collectively to the original plaintiffs who initiated these proceedings.

An "institutionalized spouse" is a person who is in a "medical institution or nursing facility" or who is described in 42 U.S.C. 1396a(a)(10)(A)(ii)(VI), is likely to meet these requirements "for at least 30 consecutive days," and is married to a person who is not in such a facility. 42 U.S.C. 1396r-5(h)(1)(A) and (B).

A "community spouse" is "the spouse of an institutionalized spouse." 42 U.S.C. 1396r-5(h)(2).

The parties and the Court of Appeals often refer to the SBO trusts at issue as "Medicaid trusts." This is an accurate label under state regulations, although the label is not used in the federal Medicaid statutes. A Medicaid trust is any trust or trust-like instrument that meets the following five criteria: (1) "[T]he person whose resources were transferred to the trust is someone whose assets or income must be counted to determine [Medicaid] eligibility"; (2) the trust was established by the person, the person's spouse, or someone else acting in place of or at the direction of the person or the person's spouse; (3) "[t]he trust was established on or after August 11, 1993"; (4) the trust was not established by will; and (5) the trust is not a "special needs trust" or "pooled trust" as defined by state regulations. See Michigan Department of Human Services, Bridges Eligibility Manual (BEM) 401 , BPB 2014-015 (July 1, 2014), pp. 5-7. It is undisputed that the trusts at issue meet these criteria.

The Department of Community Health was merged with the Department of Human Services in 2015 after the plaintiffs in Docket Nos. 156132 and 156133 filed their complaints. The combined agency is now the Department of Health and Human Services. Executive Order No. 2015-4. See In re Rasmer Estate , 501 Mich. 18, 26 n. 3, 903 N.W.2d 800 (2017).

The Court of Appeals also held that it was permissible for the Department to apply changes in its application of BEM 401 and in its reading of the federal Medicaid statutes to applications filed before such changes occurred. We need not reach this issue, because we have determined that the Court of Appeals erred in its interpretation of the controlling Medicaid statutes.

We note that the Ford Trust and Lollar Trust also reserve to the community spouses a special testamentary power of appointment, which allows them to appoint, by will, items or funds held by the trust directly to their children or their children's descendants. This power does not allow for appointments to any other individuals or entities.

By completing a "1634 agreement," a state may request that the Social Security Administration (SSA) make certain Medicaid eligibility determinations when making SSI eligibility determinations and agree to provide Medicaid benefits to those individuals whom the SSA deems eligible. Social Security Administration, Program Operations Manual System (SSA POMS ), SI 01730.010 (February 6, 2013), available at < https://secure.ssa.gov/apps10/poms.nsf/lnx/0501730010> (accessed May 2, 2019) [https://perma.cc/23YU-EYDR]. In states that execute a 1634 agreement, like Michigan, an application for SSI benefits is also an application for Medicaid benefits. SSA POMS , SI 01730.005 (February 6, 2013), available at < https://secure.ssa.gov/apps10/poms.nsf/lnx/0501730005> (accessed May 2, 2019) [https://perma.cc/2L5F-6NWX].

Congress later repealed most of the MCCA through the Medicare Catastrophic Coverage Repeal Act of 1989, PL 101-234 ; 103 Stat. 1979, but the spousal-impoverishment-prevention provisions contained in 42 U.S.C. 1396r-5 were retained.

There are also provisions, which are not at issue here, that subject an applicant to penalties for nonexempt transfers of resources during the five-year look-back period. See 42 U.S.C. 1396p(c)(1) through (5). Additional rules governing the evaluation of annuities were added by the Deficit Reduction Act of 2005, PL 109-171 ; 120 Stat. 4, and codified at 42 U.S.C. 1396p(c)(1)(F) and (G), but they also are not at issue here, and their enactment did not modify the Medicaid trust rules codified at 42 U.S.C. 1396p(d).

The State Medicaid Manual is published by the CMS to help guide states in administering the Medicaid program. The manual is not a product of formal rulemaking and does not have the force of law. Hobbs ex rel. Hobbs v. Zenderman , 579 F.3d 1171, 1186 n. 10 (CA 10, 2009). However, federal courts generally consider the manual to be strong persuasive authority to the extent that it is consistent with the purpose and text of federal statutes. Id . ; Hughes v. McCarthy , 734 F.3d 473, 478 (CA 6, 2013).

While 42 U.S.C. 1396r-5 does not use the terms "countable" and "exempt," it provides that the term "resources" does not include those things excluded by 42 U.S.C. 1382b(a) or (d). See 42 U.S.C. 1396r-5(c)(5). Items excluded under those sections include the couple's home, 42 U.S.C. 1382b(a)(1) ; household goods and personal effects, 42 U.S.C. 1382b(a)(2)(A) ; and funds set aside for burial expenses, 42 U.S.C. 1382b(d).

Any income payable solely to a community spouse from a trust is considered to be income available only to that community spouse. 42 U.S.C. 1396r-5(b)(2)(B)(ii) (stating that if income is paid solely to the institutionalized spouse or the community spouse, "the income shall be considered available only to that respective spouse[.]"). Generally, the MCCA preserves a community spouse's income for that spouse so as to avoid affecting the institutionalized spouse's eligibility for Medicaid. See Blumer , 534 U.S. at 480-481, 122 S.Ct. 962.

While "held" is undefined in the statute, Merriam-Webster's Collegiate Dictionary (11th ed.) relevantly defines "hold" as "to have possession or ownership of or have at one's disposal[.]" "When a word or phrase is not defined by the statute in question, it is appropriate to consult dictionary definitions to determine [its] plain and ordinary meaning ...." People v. Rea , 500 Mich. 422, 428, 902 N.W.2d 362 (2017).

Black's Law Dictionary similarly defines a "trustee" as "[s]omeone who stands in a fiduciary or confidential relation to another; esp., one who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary." Black's Law Dictionary (10th ed.).

Paragraph (4) provides special rules for the treatment of three types of trusts that are not at issue in this appeal. See 42 U.S.C. 1396p(d)(4).

42 U.S.C. 1396p(h) provides the following definition of "assets":
(1) The term "assets", with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action-
(A) by the individual or such individual's spouse,
(B) by a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or such individual's spouse, or
(C) by any person, including any court or administrative body, acting at the direction or upon the request of the individual or such individual's spouse.
The Court of Appeals cited this definition for the proposition that "Congress has clearly indicated that an institutionalized individual's assets include not only those that he or she has, but also those that his or her spouse has, 42 U.S.C. 1396p(h)(1), and that remains true even when those assets are placed into a trust by the spouse, 42 U.S.C. 1396d(d)(2)(A)(i) and (ii)." Hegadorn v. Dep't of Human Servs. Dir. , 320 Mich. App. 549, 569, 904 N.W.2d 904 (2017). This statement is partially correct.
Generally speaking, marital assets are considered jointly and, before the trusts were formed, income and resources belonging to the community spouse would be considered assets of the institutionalized spouse. However, once resources are moved into an irrevocable trust, they cease being assets owned or held by either spouse and become assets owned and held by the trust or trustee. Moreover, transferring one's income and property to one's spouse or directly into a trust is not an "action ... by the individual or such individual's spouse" that deprives either spouse of "resources which the individual or such individual's spouse is entitled to ...." 42 U.S.C. 1396p(h)(1). Resources that one presently has both title to and possession of are not resources that one is entitled to in the future, and transferring away such resources does not trigger 42 U.S.C. 1396p(h)(1). This is consistent with CMS's interpretation of the definition of "asset," see CMS, State Medicaid Manual , § 3257(B)(3) (rev. 64), which lists among the examples of actions that trigger the asset rule: (a) waiving the right to payment of pension income, (b) waiving a right to receive an inheritance, (c) rejecting or refusing to accept injury settlements, and (d) diverting tort settlements. Each example presents a situation in which someone has a legal right to receive income or property in the future, but that right is never realized because of some affirmative action. Such conditions do not exist here.

If assets held by a trust are not assets available to the Medicaid applicant, then those trust assets are treated as assets transferred by the applicant, which may subject the applicant to divestment penalties. See 42 U.S.C. 1396p(c). As the Department has stated, divestment penalties are not at issue in this appeal. See Appellee's Brief, p. 14.

The State Medicaid Manual generally uses the term "individual" in the same manner: "Individuals to Whom Trust Provisions Apply.--This section applies to any individual who establishes a trust and who is an applicant for or recipient of Medicaid." CMS, State Medicaid Manual , § 3259.3 (rev. 64), p. 3-3-109.26.

According to CMS, there may be an exception to this rule when the community spouse is acting on the applicant's behalf. See CMS, State Medicaid Manual , § 3259.6(D), p. 3-3-109.29 ("Payments are considered to be made to the individual when any amount from the trust ... is paid directly to the individual or to someone acting on his/her behalf , e.g., a guardian or legal representative .") (emphasis added). However, we need not reach this issue today.

The Department further argues that BEM 401 requires evaluating a Medicaid applicant's resources under both the Medicaid and the SSI any-circumstances rules. We find no legal support for this proposition. First, as already discussed, BEM 401 cites 42 U.S.C. 1396a and 42 U.S.C. 1396p as the legal basis for the rule, not 42 U.S.C. 1382b(e). Second, Michigan's state Medicaid plan states that the Department "complies with the provisions of section 1917d of the [Social Security] Act, as amended by OBRA 93, with regard to trusts." Michigan Department of Health and Human Services, State Plan Under Title XIX of the Social Security Act Medical Assistance Program , Attachment 2.6A, p. 26 (effective July 1, 1996). Section 1917d is codified at 42 U.S.C. 1396p(d), not 42 U.S.C. 1382b(e). Third, the Department's argument is foreclosed by 42 U.S.C. 1396a(a)(10)(G), which instructs a state to "disregard the provisions of subsections (c) and (e) of section [42 U.S.C.] 1382b" when it applies the "eligibility criteria of the [SSI] program under subchapter XVI for purposes of determining eligibility for medical assistance under the State plan of an individual who is not receiving [SSI] ...." Congress added 42 U.S.C. 1396a(a)(10)(G) and the SSI trust rules with the enactment of the Foster Care Independence Act. Plaintiffs here are medically needy applicants who are not receiving SSI; therefore, 42 U.S.C. 1382b(c) and (e) do not apply to evaluating their eligibility for Medicaid benefits.

The Supreme Judicial Court of Massachusetts interprets the any-circumstances rule, 42 U.S.C. 1396p(d)(3)(B)(i), in the same manner. See Daley v. Secretary of Executive Office of Health & Human Servs. , 477 Mass. 188, 193, 74 N.E.3d 1269 (2017) ("The effect of the [any-circumstances] test is that if the trustee is afforded even a 'peppercorn of discretion' to make payment of principal to the applicant, or if the trust allows such payment based on certain conditions, then the entire amount that the applicant could receive under 'any state of affairs' is the amount counted for Medicaid eligibility.").

42 U.S.C. 1396r-5(a)(1) states:
In determining the eligibility for medical assistance of an institutionalized spouse (as defined in subsection (h)(1)), the provisions of this section supersede any other provision of this subchapter (including sections 1396a(a)(17) and 1396a(f) of this title) which is inconsistent with them.

See Lollar Trust, § 2.2 ("Trustee shall from time to time during the fiscal year pay or distribute to me, or for my sole benefit, during my lifetime ... part or all of the net income and principal .... During my lifetime, no Resources of the Trust can be used for anyone other than me, except for Trustee fees."); Hegadorn Trust, § 2.2 ("Trustee shall from time to time during the fiscal year pay or distribute to me, or for my sole benefit, during my lifetime ... part or all of the net income and principal .... During my lifetime, no Resources of the Trust can be used for anyone other than me."); Ford Trust, § 2.2 ("Trustee shall from time to time during the fiscal year pay or distribute to me, or for my sole benefit, during my lifetime ... part of the net income and principal .... During my lifetime, no Resources of the Trust may be used for anyone other than me, except for Trustee Fees.").

We note that CMS has advised that "the individual" might sometimes include an applicant's spouse when that spouse is acting on behalf of the applicant. See CMS, State Medicaid Manual , § 3257(B)(1), p. 3-3-109 ("As used in this instruction, the term 'individual' includes the individual himself or herself, as well as ... [t]he individual's spouse, where the spouse is acting in the place of or on behalf of the individual [.]") (emphasis added); § 3259.6(D), p. 3-3-109.29 ("Payments are considered to be made to the individual when any amount from the trust ... is paid directly to the individual or to someone acting on his/her behalf , e.g., a guardian or legal representative .") (emphasis added). There are documents in the administrative record indicating that Mr. Hegadorn was made the legal guardian of his wife prior to creating the Hegadorn Trust and that Mrs. Lollar granted to her husband a durable power of attorney prior to the creation of the Lollar Trust. ALJ Lain made no findings of fact or conclusions of law with regard to these legal instruments, and the Department has not argued that these documents should affect our analysis. Accordingly, we decline to address whether these legal instruments affect plaintiffs' eligibility for benefits at this time.

We acknowledge that our decision on this issue is at odds with the opinion of the United States Court of Appeals for the Third Circuit in Johnson v. Guhl , 357 F.3d 403, 408-409 (CA 3, 2004) (holding that 42 U.S.C. 1396p(d)(3)(B)(i) is satisfied if "[o]nce the community spouse receives these payments, there is nothing preventing her or him from sharing them with the institutionalized spouse as well."). While the Third Circuit appears to agree that "the individual" refers to an applicant for or recipient of Medicaid benefits, its conclusory analysis disregards the statutory language requiring that the payment be a "payment from the trust " that "could be made to or for the benefit of the individual." 42 U.S.C. 1396p(d)(3)(B)(i) (emphasis added). The Third Circuit's broad language also effectively reads away any difference in the language used in the § 1396p(d)(3) any-circumstances rule and the § 1382b(e) any-circumstances rule.