*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ALLEN R. SOBLE REVOCABLE TRUST

UNPUBLISHED
May 9, 2024

RICHARD S. SOBLE, Co-trustee,

Appellant,

v

No. 364844
Oakland Probate Court
LC No. 2012-341935-TV

SHELDA SOBLE, Co-trustee,

Appellee.

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Appellant, Richard Soble, co-trustee of the Allen R. Soble Revocable Trust, appeals by right the probate court's order denying his petition and motion for Trust-related attorney fees and administration expenses, and granting Shelda Soble, co-trustee of the Allen R. Soble Revocable Trust, attorney fees and administration expenses. We affirm.

## I. FACTS

In 1969, Allen R. Soble established the Allen R. Soble Revocable Trust (the Trust). The Trust designated Allen and his wife, appellee Shelda Soble, as co-trustees. Allen and Shelda had three children together, Richard, Melinda Soble Greenberg, and Jeffrey Soble, who are named as equal remaindermen beneficiaries of the Trust. Allen Soble died in 1982, survived by Shelda. Richard, a tax attorney, succeeded Allen as co-trustee of the Trust with Shelda.

The terms of the Trust direct that the Trust assets be held by the trustees in a marital trust for the benefit of Shelda during her lifetime, and require the trustees to pay to Shelda at convenient intervals, but no less than annually, "the entire income of the Marital Trust." If the income of the Trust becomes insufficient for Shelda's support in the manner to which she is accustomed, the Trust provides for payments to Shelda from the Trust principal as reasonably required for that

-1-

purpose. Shortly after Allen's death, Shelda executed a Disclaimer[1] renouncing her interest in the Trust's principal, but not her interest in the Trust's income.

The co-trustees administered the Trust peaceably for nearly 30 years. In 2012, however, Shelda sought to remove Richard as co-trustee and also to invalidate the Disclaimer. According to Shelda, Richard began moving assets among various family trusts, made generous gifts to his and Jeffrey's families, began charging a fee for his services as co-trustee, and withheld Shelda's income distributions for three years because Shelda had not repaid an advance of $300,000. The probate court found that Richard may have breached his fiduciary duty, but held that the breach did not require his removal. The probate court also upheld the Disclaimer. More litigation ensued in 2015 to 2016 related to Richard's requests for trustee and attorney fees accrued during a first and second accounting. Fees related to a third accounting were approved by stipulation.

This case was initiated by Richard filing a fourth annual accounting of the Trust assets and a petition for fees of $9,542.50 related to trust administration and preparation of the accounting between July 2016 and June 2017. Shelda objected to the accounting and the petition for fees and filed a second petition to remove Richard as co-trustee under MCL 700.7706.[2] Shelda alleged that Richard unilaterally prepared the fourth accounting, refused to cooperate with her in the preparation of annual accounts, refused to communicate through her attorney, and delayed the Trust's income distributions.

Richard moved for summary disposition under MCR 2.116(C)(8), arguing in part that various conflicts of interest prevented Shelda's attorney, Elizabeth Luckenbach, from representing Shelda. The probate court denied Richard's motion for summary disposition and denied Richard's request to disqualify Shelda's counsel, finding no conflict of interest.

After an evidentiary hearing, the probate court entered an order on February 23, 2021 denying Shelda's petition to remove Richard. The probate court found Richard's failure to cooperate with Shelda, by unilaterally filing an annual accounting and refusing to communicate through her lawyer, "to be a form of breach of trust by failing to follow the intent of the settlor that the co-trustees work collaboratively." The probate court nonetheless declined to remove Richard, finding that the Trust otherwise had been properly administrated. The probate court approved the fourth annual accounting and Richard's request for Trust administration fees and accounting fees between 2016 and 2017, and granted Shelda's expenses and attorney fees incurred during that period, minus 3½ hours (approximately $12,570.33 in fees). To facilitate the co-trustees working

---

[1] The purpose of the Disclaimer apparently was to exclude the Trust's assets from Allen's taxable estate.

[2] MCL 700.7706 provides, in relevant part:

> (2) The court may remove a trustee if 1 or more of the following occur:
>
> (a) The trustee commits a serious breach of trust.
>
> (b) Lack of cooperation among co-trustees substantially impairs the administration of the trust.

together, the probate court's order included specific instructions to the parties to work cooperatively.

After entry of the February 2021 order, the parties petitioned the probate court for fees arising from the litigation. Richard moved for attorney fees of $47,784.75 for legal work he performed related to the accounting and the litigation and $66,000.63 for fees incurred by his attorney, Monica Moons, related to the litigation. Richard also filed a petition to allow and regularize his trustee and attorney fees as a recurring yearly regular fee of $10,000, seeking Trust administration fees in the amount of $34,995.25 for the period between July 2017 and December 2020, and seeking $3,624.14 in Moons' attorney fees related to legal work performed in administration of the Trust.

Shelda filed a petition for attorney fees and Trust administration expenses for 2017 through April 2021, seeking $12,625.36 in administration fees, $120,086.72 in attorney fees, and $3,870 in fees related to accounting services. Shelda stipulated to the payment from the Trust of Moons' attorney fees related to the litigation, i.e., $66,000.03, and $3,624.14 in attorney fees related to Moons' legal work performed in administration of the Trust. Richard made no reciprocal stipulation for the payment of Shelda's fees.

The probate court ordered the parties to file specific objections. Shelda asserted that a portion of Richard's request for $34,992.25 for Trust administration from July 2017 to December 2020, and a regularized fee of $10,000 each year, was excessive and unreasonable given that Richard was merely reviewing accounts or tax returns or performing simple, straightforward accounting. Shelda also argued that $4,712.50 of Richard's attorney fees related to the litigation was unreasonable because that amount was incurred for attending court hearings during which Moons acted as Richard's counsel. Shelda further argued that Richard's failure to cooperate necessitated the litigation, that the probate court had found Richard to be in breach of trust, and that Richard's fees should therefore be denied under MCL 700.7904.[3]

Richard contested all Shelda's requested fees. Richard argued that Luckenbach's representation of Shelda as both trustee and beneficiary, and her representation of Melinda, caused Luckenbach's bills to include services for Shelda and Melinda individually. Richard also asserted that Shelda's requested attorney fees were unreasonable because Shelda pursued the litigation for personal reasons that did not benefit the Trust, failed to achieve Richard's removal, were not necessary for the result obtained, were for unrelated litigation, and that the rates charged were not supported.

The trial court held an evidentiary hearing regarding Shelda's requested attorney fees related to the litigation, whether Shelda's fees were properly allocated to principal, Richard's requested fiduciary fees and attorney fees between July 2017 and December 2020, and Richard's requested regularized annual trustee fee of $10,000. Richard testified that he billed at both fiduciary and attorney rates for hearings he attended related to Trust proceedings because he

---

[3] MCL 700.7904(3) provides that "[a] court may reduce or deny a trustee's claim for compensation, expenses, or disbursements with respect to a breach of trust."

assisted his attorney with legal arguments. Richard also indicated that he charged the attorney rate to review tax returns and an accounting rate to prepare accountings.

Luckenbach, Shelda's attorney, testified that certain reductions were made to the total fee requested, reducing it to $129,446.98, accounting for duplicative services, fees already paid, or fees incurred in unrelated litigation. Luckenbach testified regarding her own qualifications and hourly rate, that she directly supervised the other attorneys and paralegals in her firm who worked on the Trust matter, and that their rates were reasonable and appropriate for the work performed.

Mary Lyneis, an expert in trust and estate administration, testified with respect to Richard's fees that she had never seen a trustee charge a separate accounting rate for preparation of annual accounts and that the rate seemed high and the hours unreasonable for the type of work performed. Lyneis testified that a prospective flat fee was not proper under the law because such fees are subject to a reasonableness standard, and that Richard's logs reflected an attempt to manipulate the hours to reflect $10,000 per year.

At the conclusion of the evidentiary hearing, the probate court rejected Richard's contention that Luckenbach had a conflict of interest, found that Shelda's expenses incurred for Trust administration were compensable, and found the billing from Luckenbach's firm supported by the evidence. The probate court evaluated Shelda's requested fees under the test articulated in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016), and determined the rate customarily charged for each attorney, legal assistant, or paralegal for each year in question and then adjusted, as necessary, the fees under the *Pirgu* factors. The probate court held that Shelda's expenses were to be reimbursed from the Trust principal. The probate court reasoned that Section NINTH C of the Trust provides that the trustee shall not be "individually liable" for the trustee's expenses and compensation related to the Trust administration, and allocating Shelda's reimbursement to the Trust income would make Shelda individually liable. The probate court denied Richard's motion for litigation fees and expenses under MCL 700.7901(2)(h) due to Richard's "numerous and significant breaches of his fiduciary duties." The probate court entered an order on January 18, 2023, consistent with its ruling on the record. Richard now appeals.

## II. DISCUSSION

## A. STANDARD OF REVIEW

We review the probate court's dispositional rulings for an abuse of discretion, which occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes, or when the probate court makes an error of law. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). We review for clear error the probate court's factual findings, which occurs when we are left with a definite and firm conviction that the probate court made a mistake. *Id*. We review de novo questions of statutory interpretation and the probate court's construction and interpretation of a trust. *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 245; 931 NW2d 571 (2019). We review for an abuse of discretion the probate court's award of attorney fees, as well as the reasonableness of the fees. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008).

## B. RICHARD'S FIDUCIARY FEES

Richard contends that the probate court erred by denying his requested fiduciary fees as a sanction under MCL 700.7901(2) on the basis that he breached his fiduciary duties. We disagree.

The Michigan Trust Code (MTC), MCL 700.7101 *et seq.*, governs the duties and powers of a trustee, except as otherwise provided in the terms of a trust. MCL 700.7105(1); *In re E. Earl Lyden Trust*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362112) (MARKEY, J., concurring in part and dissenting in part); slip op at 15. MCL 700.7801 provides that "[u]pon acceptance of a trusteeship, the trustee shall administer the trust in good faith, expeditiously, in accordance with its terms and purposes, for benefit of the trust beneficiaries, and in accordance with this article."

Under the MTC, a breach of trust occurs when a trustee violates a duty the trustee owes to a trust beneficiary. MCL 700.7901(1). "A claimed breach of duty and any resulting liability is tested by the facts of each case." *In re Green Charitable Trust*, 172 Mich App 298, 312; 431 NW2d 492 (1988); see also *Hertz v Miklowski*, 326 Mich 697, 700; 40 NW2d 452 (1950).

The MTC provides broad authority to the probate court to remedy a breach of trust, including reducing or denying compensation to the trustee. MCL 700.7901 provides, in relevant part:

> (1) A violation by a trustee of a duty the trustee owes to a trust beneficiary is a breach of trust.

> (2) To remedy a breach of trust that has occurred or may occur, the court may do any of the following:

> * * *

> (h) Reduce or deny compensation to the trustee.

> * * *

> (j) Order any other appropriate relief.

MCL 700.7904(3) similarly provides that "[a] court may reduce or deny a trustee's claim for compensation, expenses, or disbursements with respect to a breach of trust."

In this case, the probate court denied Richard's motion for fiduciary fees and expenses due to Richard's "numerous and significant breaches of his fiduciary duties." Richard contends that the probate court's February 2021 order did not find any significant breaches of duty other than Richard's attempt to remove Luckenbach, Shelda's attorney, for an alleged conflict of interest, and that the probate court thereby failed to comply with MCR 2.517.

MCR 2.517(A)(1) provides that, in matters decided without a jury, a court "shall find the facts specially, [and] state separately its conclusions of law[.]" MCR 2.517(A)(2) provides that "[b]rief, definite and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts." The requirements of MCR 2.517 are satisfied when "it appears that the trial court was aware of the issues in the case and correctly

applied the law, and where appellate review would not be facilitated by requiring further explanation." *In re JCB*, 336 Mich App 736, 753; 971 NW2d 705 (2021) (quotation marks and citation omitted).

In its February 2021 order, the probate court determined that Richard breached a trust duty under MCL 700.7901(1) by failing to follow the intent of the Trust settlor that the co-trustees work collaboratively. The probate court specifically found that Richard breached a trust duty by unilaterally filing an annual account without the co-trustee's knowledge and by refusing to communicate with Shelda's lawyer. A review of the record demonstrates support for the probate court's finding that Richard breached a trust duty by unilaterally filing the fourth accounting without cooperating with the co-trustee and filing a baseless motion to disqualify Shelda's attorney. We conclude that the probate court satisfied the requirements of MCR 2.517, specifically finding the facts and stating its conclusions of law on this issue.

We further conclude that the probate court did not abuse its discretion by denying Richard compensation under MCL 700.7901(2) and MCL 700.7904(3). Richard argues that the probate court gave the term "breach of trust" a broader meaning than the term is given in MCL 700.7901. Richard does not support this claim with citation to authority, however, thereby abandoning this issue. See *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013). Richard also argues that he is being "retroactively penalized" for any breach of trust because the probate court did not deny his compensation in its February 2021 order. We note, however, that the fees Richard requested at the time of the entry of the February 2021 order were related to Trust administration and the creation of the fourth annual accounting, rather than fees arising from the litigation that followed that accounting.

Richard also claims that the probate court's finding that a breach of trust occurred was dicta that cannot form a legal basis to sanction Richard. However, the probate court's finding in the February 2021 order that Richard breached a trust duty was necessary to the court's decision resolving Shelda's petition to remove Richard as co-trustee, and thus is not obitur dictum. See *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 437; 751 NW2d 8 (2008) (recognizing that dicta is "a judicial opinion in a matter related but not essential to a case").

Richard also contends that the denial of his fees was not proportionate to the gravity of his breaches of trust and that a lesser sanction was more appropriate. We disagree. A probate court is authorized to remedy a breach of trust by reducing or denying compensation to the trustee. MCL 700.7901(2)(h); MCL 700.7904(3). As noted, an asserted breach of duty "is tested by the facts of each case." *In re Green Charitable Trust*, 172 Mich App at 312. The circumstances of this case do not indicate that denial of a portion of Richard's fees was excessive. Shelda stipulated to the payment of $66,000.03 and $3,624.14 to Moons, Richard's attorney. The probate court's denial of compensation was for Richard's request for the time Richard himself provided attorney services related to the litigation, as well as Richard's Trust administration fees between July 2017 and December 2020. Although the probate court did not find that Richard's breach of trust substantially impaired the administration of the Trust, and therefore did not support removal of Richard as co-trustee, it found that nonetheless Richard's misconduct was "the primary reason [for the repeated] lengthy trials costing the trust . . . hundred[s of] thousand[s of] dollars in legal and fiduciary fees," suggesting that the probate court sought to protect the Trust from further diminution by Richard's continued misconduct. Under these circumstances, denying Richard

compensation for services Richard himself performed related to the litigation and Trust administration was not an abuse of the probate court's discretion.

Richard also asserts that by sanctioning him, the probate court disregarded Sections NINTH B and C of the Trust. Richard argues that the probate court cannot deny him reasonable compensation under the terms of the Trust, and because the Trust controls over the provisions of the MTC, the probate court erred by denying him the fees requested. But although the terms of a trust control over the general provisions of the MTC, MCL 700.7105(1), neither Section NINTH B or C of the Trust prohibit the probate court's denial of fees predicated on breach of trust. Those sections provide:

> B.     Any individual acting as a Trustee shall not be liable for any loss or depreciation in value occasioned by reason of any negligence, error or mistake of judgment in entering into any transaction, in making any sale or investment or in continuing to hold any property, or by reason of any action or omission, whether by him or any other fiduciary, unless he shall have acted in bad faith. This Section NINTH B shall not be applicable to a corporate fiduciary.

> C.     Trustee shall be entitled to receive reasonable compensation for services in the performance of his duties hereunder and shall be reimbursed for all costs, expenses, charges and liabilities incurred or paid in respect thereto, including fees and expenses of his counsel or any other agents hired by him, and he shall not be liable therefor individually.

Section NINTH B is inapplicable to the facts of this dispute, and section NINTH C entitles a trustee to "reasonable compensation" for services in performance of trustee duties. Neither section addresses appropriate sanctions for a trustee's breach of trust. We conclude that the terms of the Trust did not preclude the authority of the probate court under the MTC to reduce or deny Richard's compensation for breach of trust.

## C.  SHELDA'S ATTORNEY FEES

Richard contends that the probate court erred by allowing Shelda's legal expenses on the basis of Luckenbach's testimony, and by granting Shelda's motion in limine to preclude consideration of Luckenbach's conflict of interest. We disagree.

MCL 700.7904(2) provides that, "if a trustee participates in a civil action or proceeding in good faith, whether successful or not, the trustee is entitled to receive from trust property all expenses and disbursements including reasonable attorney fees that the trustee incurs in connection with its participation." To calculate a party's reasonable attorney fees, Michigan courts apply the methodology set forth in *Pirgu*, 499 Mich at 281. *Pirgu* directs that a court "must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services. The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure." *Id*. Having reached a baseline figure, the court is to then consider whether an upward or downward adjustment is appropriate on the basis of the following nonexclusive list of factors:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Id*. at 282.]

The burden is on the fee applicant to establish that the hourly rate is reasonable and also to establish the hours worked. *Smith v Khouri*, 481 Mich 519, 531; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.).

Richard contends that the probate court erred by relying on Luckenbach's testimony that the fees charged by her firm were reasonable. At the time of Luckenbach's testimony, MRE 602 provided that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Richard argues that Luckenbach's testimony was inadmissible because she did not have personal knowledge of all the timekeepers' invoiced time because Luckenbach did not directly supervise all the timekeepers. Richard points to time entries referring to interactions allegedly demonstrating that the timekeepers reported to other supervisors, not Luckenbach.

The invoices for the time period at issue reflect that Luckenbach and Sara Rubino performed the vast majority of the work, with the remaining work performed by various lawyers with lesser experience and paralegals. Luckenbach testified that she directly supervised all the timekeepers who worked on the Trust, reviewed their billing entries, including the type of service performed and the quality of the work produced, and adjusted rates on the basis of her experience performing those same tasks (in most instances, the adjustment was downward). Luckenbach testified regarding the timekeepers' competency and years of experience, and testified that their rates were reasonable and appropriate for the work performed. According to Luckenbach, "Every single person who billed time to the Allen Soble Trust matter did so at my direction." The probate court rejected Richard's objection that Luckenbach lacked personal knowledge, reasoning:

Ms. Luckenbach testified to having personal knowledge of the work that was done. Ms. Luckenbach testified that she personally assigned the work to the people who are listed in the invite -- invoice. She supervised all of the work, reviewed their work product. And further, reviewed the billing statements of each biller to make

sure that the billings were in line with the work that was produced and that there was not overbilling.

In fact, Ms. Luckenbach testified at trial that she went through them and actually reduced time where appropriate. And in fact, I did review the invoices and I found several places where Ms. Luckenbach did in fact do that.

Luckenbach's testimony was sufficient to establish that she had personal knowledge of the work performed and the hours spent. The probate court chose to believe Luckenbach, and we defer to the probate court on matters of credibility. See *In re Portus*, 325 Mich App at 397. Because Luckenbach's testimony established that she had personal knowledge, the probate court's decision to consider Luckenbach's testimony was not an abuse of the probate court's discretion.

Richard also contends that Luckenbach had a conflict of interest that prevented her from representing Shelda, and that as a result Shelda may not recover for Luckenbach's fees. Richard raised the argument that Luckenbach's representation of Shelda suffered from a conflict of interest in a 2017 motion. The probate court considered Richard's argument as a motion to disqualify Luckenbach and denied the motion.[4] We agree that Richard failed to establish a conflict of interest in Luckenbach's representation of Shelda. The party seeking to disqualify an attorney on the basis of an alleged conflict of interest has the burden to demonstrate specifically how and as to what issues in the case there is a likelihood of prejudice arising from the alleged conflict. *Rymal v Baergen*, 262 Mich App 274, 319; 686 NW2d 241 (2004). In this case, Richard has not demonstrated a conflict of interest nor that Luckenbach's representation of Shelda resulted in prejudice in any aspect of the conflict.

Richard also contends that certain of Shelda's attorney fees should be disallowed because the services did not preserve or enhance the value of the Trust, or otherwise provide a benefit to the Trust as a whole, but instead benefited Shelda individually. Richard points to Shelda's attorneys' fees related to the challenge arising from the fourth accounting, their advice that Shelda purchase bonds, review of documents related to attorney-client privilege, and review of the sale of a Trust asset. MCL 700.7904 provides:

(1) In a proceeding involving the administration of a trust, the court, as justice and equity require, may award costs and expenses, including reasonable

---

[4] In its February 2021 opinion and order, the probate court provided background for the basis of Richard's objection to Luckenbach as Shelda's attorney, stating that "[T]he problem is that Shelda's chosen lawyer had also represented his sister, Melinda Soble-Greenberg, whom Richard simply cannot abide. . . . Richard Soble has utter disdain for his sister, and anyone and anything associated with her must be rejected. . . . [In addition,] Richard Soble considers the fact that Shelda Soble is a co-trustee and a beneficiary creates a potential conflict of interest. This court notes, however, that it is also a fact that Richard is a co-trustee and a beneficiary, specifically a remainder beneficiary [and is also represented by counsel]."

-9-

attorney fees, to any party who enhances, preserves, or protects trust property, to be paid from the trust that is the subject of the proceeding.

(2) Subject to subsection (3), if a trustee participates in a civil action or proceeding in good faith, whether successful or not, the trustee is entitled to receive from trust property all expenses and disbursements including reasonable attorney fees that the trustee incurs in connection with its participation.

(3) A court may reduce or deny a trustee's claim for compensation, expenses, or disbursements with respect to a breach of trust.

Under MCL 700.7904(2), Shelda, as a trustee, is entitled to fees incurred in connection with her participation in proceedings involving the administration of the Trust, regardless of whether she was successful in the litigation, as long as she acted in good faith. MCL 700.7904(2) does not require that a trustee participating in a civil action enhance, preserve, or protect trust property to be entitled to attorney fees under that subsection, as is required of "a party" under MCL 700.7904(1). Because there is no requirement within the plain language of MCL 700.7904(2) that Shelda's participation in the litigation benefit the Trust, the probate court did not err by not imposing this requirement.

### D. FEES CHARGED TO TRUST PRINCIPAL

Richard contends that the probate court erred by allocating Shelda's fees to the Trust's principal. Richard argues that the probate court incorrectly relied on Section NINTH C of the Trust to allocate Shelda's expenses to the principal. We disagree that the probate court erred.

Michigan's Uniform Principal and Income Act (UPIA), MCL 555.501 *et seq.*, creates a set of default rules applicable to the manner in which receipts and expenditures of trusts are credited and charged between income and principal when a trust is silent in that regard. See MCL 555.503(1). That statutory section provides, in relevant part:

(1) In allocating receipts and disbursements to or between principal and income, and with respect to any matter found within the scope of articles 1 and 2, a fiduciary shall do all of the following:

(a) Administer a trust or estate in accordance with the terms of the trust or the will, even if there is a different provision in this act.

(b) Administer a trust or estate in accordance with this act if the terms of the trust or the will do not contain a different provision or do not give the fiduciary a discretionary power of administration.

(c) Add a receipt or charge a disbursement to principal to the extent that the terms of the trust and this act do not provide a rule for allocating the receipt or disbursement to or between principal and income. [MCL 555.503(1).]

In this case, the probate court relied on section NINTH C of the Trust when allocating Shelda's fees to the Trust principal. Section NINTH C provides:

A Trustee shall be entitled to receive reasonable compensation for services in the performance of his duties hereunder and shall be reimbursed for all costs, expenses, charges and liabilities incurred or paid in respect thereto, including fees and expenses of his counsel or any other agents hired by him, and *he shall not be liable therefor individually*. [Emphasis added.]

Under the terms of the Trust, Shelda is entitled to the entire Trust income. The probate court allocated reimbursement of her fees to the Trust principal, reasoning that Section NINTH C mandates that a trustee shall not be individually liable for the expenses of his or her trustee duties, including attorney fees. The probate court concluded that reimbursing Shelda for her expenses from the Trust income would result in Shelda paying her attorney fees from her own money and thus being liable individually for those expenses.

When interpreting a trust, our goal is to ascertain and give effect to the intent of the trust settlor. *Hegadorn*, 503 Mich at 245. If the language of the trust is unambiguous, we interpret the trust language according to its plain and ordinary meaning. *Id*. Here, the trust language in question uses the phrase "liable therefor individually." That language is synonymous with "personal liability," which means "liability for which one is personally accountable and for which the wronged party can seek satisfaction out of the wrongdoer's personal assets." *Black's Law Dictionary* (11th ed). It follows that, under Section NINTH C, trustees shall not be individually liable, out of their own personal assets, for the satisfaction of fees related to the administration of the Trust. The probate court in this case correctly observed that any of Shelda's expenses allocated to income would be an expense borne by Shelda individually. The probate court observed:

> . . . Shelda Soble has been forced to incur [a] substantial amount of expenses getting reimbursement for prior expenses that she was entitled to all along, in my [estimation]. I'll point out here, [Shelda] stipulated to Ms. Moons' fees but [there was] no such reciprocation, reasonable reciprocation [from Richard] going the other way.

> * * *

> And on top of that, it's like even more so a win-win situation. By -- by Mr. Soble's arguments under the -- how he interprets the trust and the Uniform Principal and Income Act, his brother, his sister and his mother end up paying effectively five-sixth of his fees. Only one-sixth comes out of his pocket. Half comes out of the income and half comes out of principal, and the principal is divided by three. Between those three after Ms. Shelda Soble is gone -- pardon me, Ms. Soble, you look very healthy -- ends up -- he only -- he suffers minimally while getting paid for doing it.

> And his mother, amazingly, pays half. And you know, with some of the arguments that he's made and positions he's taken, and the fact that he just didn't get my opinion from February of last year, I think it was last year, 2021, for the 10 plus years since this case started it seems clear to me that under these circumstances a loss to Mr. Soble is just words on paper. Just goes right over his head. He doesn't care because he doesn't lose. He gets paid to do all of this.

-11-

Richard argues[5] that section NINTH C does not directly address whether such fees are to be paid or allocated from the Trust income or the Trust principal, and as a result, the provisions of the UPIA control, and specifically MCL 555.901, which provides in relevant part:

A trustee shall make the following disbursements from income . . . .

* * *

(b) One-half of all expenses for accountings, judicial proceedings, or other matters that involve both the income and remainder interests.

However, MCL 555.902 provides, in relevant part:

(1) A trustee shall make the following disbursements from principal:

* * *

(d) Expenses of a proceeding that concerns primarily the principal, including a proceeding to construe the trust or to protect the trust or its property.

Assuming, without deciding, that under these circumstances the provisions of the UPIA control, MCL 555.902 provided for the distributions from principal given that Shelda initiated the proceedings to protect the Trust principal by seeking removal of Richard as co-trustee. Because under the circumstances of this case the probate court's decision to allocate Shelda's fees to Trust principal is supported under both section NINTH C of the Trust and MCL 555.902, the probate court's determination is not subject to reversal. See *Bailey v Antrim Co*, 341 Mich App 411, 420; 990 NW2d 372 (2022) (This Court will not reverse the trial court's decision when it reaches the correct result, even if based upon incorrect reasoning).

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates

---

[5] Richard also argues that the Disclaimer signed by Shelda precludes allocation of her fees to Trust principal. Richard provides no legal authority supporting the premise that a disclaimer of trust principal precludes a trustee from receiving fees from trust principal for professional services that the trustee incurred in connection with the administration of the trust. In any event, payment from the Trust's principal of Shelda's Trust-related expenses does not give Shelda an interest in the Trust principal contrary to the terms of the Disclaimer.