# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

*In re* ESTATE OF SIZICK

Docket No. 166921. Argued on application for leave to appeal October 9, 2025. Decided March 18, 2026.

Janet Sizick, the wife of Jerome Sizick, petitioned the Saginaw Probate Court in May 2021 for a protective order under MCL 700.5401(3), asking the court to transfer all of Jerome's assets and the majority of his income to her. Jerome had moved into a nursing home after his health declined in March 2021, and in May 2021, he began paying privately for his care after his health insurance was terminated. Janet filed her petition before Jerome applied for Medicaid coverage to help pay for his care, and his Medicaid application was pending when the probate court held a hearing and issued an order on Janet's petition. The probate court, Patrick J. McGraw, J., made findings under MCL 700.5401(3)(a) and (b) and entered an order directing Jerome to transfer his assets to Janet and to pay her monthly support of $2,318. The Department of Health and Human Services (DHHS) appealed the order, and in an unpublished per curiam opinion issued on May 26, 2022 (Docket No. 357785) (*Sizick I*), the Court of Appeals, MURRAY, P.J., and SAWYER and M. J. KELLY, JJ., affirmed in part, vacated in part, and remanded for additional proceedings. The panel concluded that the probate court properly determined that Jerome was unable to manage his property or business affairs because of mental deficiency and physical illness under MCL 700.5401(3)(a). However, the panel "reluctantly" agreed with DHHS's argument that, under *In re Estate of Schroeder*, 335 Mich App 107 (2020), the probate court erred in its determination of the spouses' needs under MCL 700.5401(3)(b) by considering Medicaid before a final Medicaid-eligibility determination had been made; accordingly, the panel remanded for a redetermination of need. On remand, the probate court, noting that it was required to consider both spouses' needs and resources, concluded that Janet had established her need for the amount requested and issued an "amended protective order," again directing Jerome to transfer all of his assets to Janet and to pay her $2,318 per month. The court additionally ordered that the amended order was to be applied retroactively to the date of its previous order. DHHS appealed, and in an unpublished per curiam opinion issued on January 18, 2024 (Docket No. 364321) (*Sizick II*), the Court of Appeals, BOONSTRA, P.J., and O'BRIEN and SWARTZLE, JJ., again affirmed in part, vacated in part, and remanded for further proceedings, holding that the probate court erred by finding that the requirements of MCL 700.5401(3)(b) were satisfied and by relying on outdated information to determine the value of the assets being transferred. Janet applied on behalf of Jerome for leave to appeal in the Supreme Court; Jerome subsequently died, and the Supreme Court granted Janet's motion to substitute the personal representative of Jerome's estate as the named petitioner-

appellant. The Supreme Court ordered and heard oral argument on the application. ___ Mich ___ (Docket No. 166921) (January 24, 2025).

In a unanimous opinion by Chief Justice CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

When analyzing the respective needs of an individual seeking a protective order and his dependents under MCL 700.5401(3)(b), the probate court may consider the availability of Medicaid benefits before DHHS has made a Medicaid-eligibility determination. *Schroeder*, 335 Mich App 107, was overruled to the extent it was inconsistent with this holding. The Court of Appeals erred by vacating the 2022 protective order, and its judgment was reversed in that regard and the 2022 protective order was reinstated.

1. The appeal before this Court was not rendered moot by Jerome's death. Medicaid applicants have a right to a full and fair hearing before an impartial hearing officer. Further, Medicaid benefits can be awarded retroactively, including to deceased individuals. Jerome requested a fair hearing with the Michigan Office of Administrative Hearings and Rules (MOAHR) after DHHS denied his first and second Medicaid applications. The two MOAHR appeals were consolidated and held in abeyance pending the outcome of this case. Michigan's Medicaid policies expressly provide for retroactive reimbursement when a denial of Medicaid benefits is overturned on appeal by DHHS, an administrative law judge (ALJ), or a court. If Jerome were to prevail in the unresolved MOAHR appeals, his estate would be entitled to retroactive benefits on his behalf, and reinstating the protective order would enable the MOAHR ALJ to consider it in the fair-hearing proceedings. Accordingly, reinstatement of the protective order would have a practical legal effect.

2. The probate court can properly consider whether Medicaid benefits will be available to the protected individual prior to an eligibility determination when issuing a protective order under MCL 700.5401(3). Under the statute, before a protective order can issue in a probate case, the probate court must find that the individual seeking the order has property that will be wasted or dissipated unless proper management is provided, or that money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and protection is necessary to obtain or provide money. Only one of the conditions specified in the statute was relevant here: that "money is needed for the individual's support, care, and welfare or for those entitled to the individual's support." This provision explicitly directs the probate court to consider two sets of interests: those of the individual seeking the order and those of any dependents. The statute does not instruct the court to prioritize one set of needs above the other, but instead contemplates an individualized assessment of the needs and circumstances of each person. Because a protective order must account for those individuals' ongoing support needs for the foreseeable future, the court's assessment necessarily involves a prospective analysis. Given this, nothing in the statute forecloses consideration of the availability of Medicaid benefits, even if DHHS has not yet issued an eligibility determination, and the contrary holding in *Schroeder* was overruled. As emphasized in *In re Vansach Estate*, 324 Mich App 371 (2018), MCL 700.5401(3)(b) requires careful consideration of both spouses' respective interests and needs. Such an analysis requires consideration of each individual's foreseeable support needs, including whether they are—or will be—eligible for Medicaid benefits.

3. The probate court properly considered Jerome's and Janet's respective needs, and there was sufficient evidence presented at the 2022 hearing to support the transfer of assets and award of support ordered by the probate court. On remand following *Sizick I*, the probate court considered additional evidence regarding the increase in Janet's monthly budget and Jerome's nursing home costs. This included testimony that Janet had been paying a portion of those costs that was roughly equivalent to the patient-pay amount that Jerome would owe for his care if he were receiving Medicaid benefits. The court considered the availability of Medicaid benefits for Jerome as one of many relevant considerations in its needs analysis. There was no error or abuse of discretion in its findings and conclusions under MCL 700.5401(3)(b). In *Sizick II*, the Court of Appeals reiterated its erroneous holding from *Sizick I*, pursuant to *Schroeder*, that the probate court could not consider the availability of Medicaid benefits. Without *Schroeder*, that holding could not stand. Moreover, despite the panel's conclusion that the probate court erred by not using up-to-date information regarding the value of the couple's assets and their respective interests in those assets, the information was at most only a few years old and there was no indication that requiring reappraisals of all assets would change the analysis. Therefore, any error was harmless.

Court of Appeals' judgment reversed in part, probate court's 2022 protective order reinstated, and case remanded to the probate court for further proceedings.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED March 18, 2026

STATE OF MICHIGAN

SUPREME COURT

*In re* ESTATE OF JEROME E. SIZICK.

JULIE K. GRIES, Personal Representative
of the ESTATE OF JEROME E. SIZICK,

       Petitioner-Appellant,

v                                      No. 166921

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

       Respondent-Appellee.

BEFORE THE ENTIRE BENCH

CAVANAGH, C.J.

Medicaid assists over 2.6 million Michiganders, including 168,000 seniors and three in five nursing home residents.[1]  At issue in this case is whether, when analyzing the respective needs of an individual seeking a protective order and his dependents under MCL 700.5401(3)(b), the probate court can consider whether Medicaid benefits will be available to that individual before the Department of Health and Human Services (DHHS) has made a Medicaid-eligibility determination.  We hold that this is a proper consideration and overrule the Court of Appeals' contrary conclusion in *In re Estate of Schroeder*, 335 Mich App 107; 966 NW2d 209 (2020).  We therefore reverse the Court of Appeals' decision on this issue, reinstate the probate court's 2022 protective order, and remand this case to the probate court for further proceedings consistent with this decision.

## I.  MEDICAID IN MICHIGAN

Established in 1965, Medicaid is a joint federal and state program through which the federal government reimburses states for a portion of the cost of medical care for low-income individuals who are aged, blind, disabled, or in a family with dependent children. *Harris v McRae*, 448 US 297, 301 & n 1; 100 S Ct 2671; 165 L Ed 2d 784 (1980); *Cook v Dep't of Social Servs*, 225 Mich App 318, 320; 570 NW2d 684 (1997).  "Each participating State develops a plan containing reasonable standards . . . for determining eligibility for and the extent of medical assistance."  *Schweiker v Gray Panthers*, 453 US 34, 36; 101 S

---

[1] Michigan Department of Health and Human Services, *Executive Directive 2025-3* (2025), pp 4-5, 19, available at <https://www.michigan.gov/mdhhs/-/media/Project/Websites/mdhhs/Inside-MDHHS/Newsroom/ED-2025-3-FINAL.pdf> (accessed December 4, 2025) [https://perma.cc/8XJ4-RDZ2]; see also KFF, Medicaid in Michigan (May 2025), p 1, available at <https://files.kff.org/attachment/fact-sheet-medicaid-state-MI> (accessed December 4, 2025) [https://perma.cc/46RX-ZXM6].

Ct 2633; 69 L Ed 2d 460 (1981) (quotation marks and citation omitted). In formulating these standards, states must "provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant . . . ." 42 USC 1396a(a)(17). "State Medicaid plans must comply with requirements imposed both by [Title XIX of the Social Security Act] . . . and by the Secretary of Health and Human Services [HHS]." *Schweiker*, 453 US at 37; see 42 USC 1396a(a). These state plans must meet the federal minimum-standard threshold for eligibility but can be more expansive at the state's discretion. 42 USC 1396a(a). HHS issues mandatory, advisory, and optional Medicaid policies and procedures to the states through the State Medicaid Manual and the Program Memorandum.

Relevant here, Congress amended the Medicaid program to address the problem of shared marital assets foreclosing Medicaid access for married couples. "Because spouses typically possess assets and income jointly and bear financial responsibility for each other, Medicaid eligibility determinations for married applicants have resisted simple solutions." *Wisconsin Dep't of Health & Family Servs v Blumer*, 534 US 473, 479; 122 S Ct 962; 151 L Ed 2d 935 (2002). Under the original Medicaid rules, married couples had to either spend down their assets or legally divorce to access the program's benefits. See *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 247-248; 931 NW2d 571 (2019). Congress added spousal protection from impoverishment to the Medicaid program in the Medicare Catastrophic Coverage Act of 1988 (MCCA). 42 USC 1396r-5. The MCCA protections address the Medicaid program's treatment of certain institutionalized spouses' income and

resources, allowing a community spouse[2] to keep a portion of the institutionalized spouse's income instead of having to apply it to care costs. 42 USC 1396r-5. States must comply with the MCCA's provisions and follow its methodology to compute a community spouse income allowance. 42 USC 1396r-5(d). However, the MCCA authorizes courts to grant relief from the standard community spouse allowance by providing that if a court has entered an order against the institutionalized spouse for monthly income for the support of the community spouse, the community spouse allowance determined by the state agency or an administrative hearing process must not be less than the amount of monthly income ordered by the court. See 42 USC 1396r-5(d)(5).

Michigan has participated in the Medicaid program since 1966. DHHS oversees the Medicaid program in Michigan in partnership with the federal government and is authorized to implement and administer the Medicaid program at the state level pursuant to the Social Welfare Act. MCL 400.1 *et seq*. The Michigan Medicaid State Plan (the "state plan") reflects an agreement between the state and federal governments that identifies the general health care services, reimbursement, and eligibility policies in effect.

---

[2] "The [MCCA's] spousal impoverishment provisions permit a spouse living at home (called the 'community spouse') to reserve certain income and assets to meet the minimum monthly maintenance needs he or she will have when the other spouse (the 'institutionalized spouse') is institutionalized, usually in a nursing home, and becomes eligible for Medicaid." *Wisconsin Dep't of Health & Family Servs*, 534 US at 477-478.

4

DHHS has issued policies to administer the state plan, which are found in the *Bridges Eligibility Manual* (*BEM*)[3] and the *Bridges Administrative Manual* (*BAM*).[4]

In Michigan, "medically needy individuals . . . become eligible for Medicaid benefits only when their incomes and assets are reduced below certain established levels." *Hegadorn*, 503 Mich at 247. In determining the resources of an individual, certain assets are considered exempt and are excluded from the calculations. See *BEM 400*, BPB 2025-022 (October 1, 2025); 42 USC 1382b(a). Examples of excluded assets include the individual's home, including adjoining land; household goods and personal effects, including furniture and furnishings, clothing, jewelry, and items of personal care; an automobile; and burial spaces, including certain types of prepaid funerals. See 42 USC 1382b(a)(1) and (2). To access benefits through the state plan, an individual who is identified as falling within an "SSI-related"[5] category (i.e., a person who is aged, blind, or disabled) can have no more than $2,000 in nonexempt assets. *BEM 400* at 8-9; 42 USC 1382(a)(1), (3). See *Hegadorn*, 503 Mich at 246-247.

---

[3] Michigan Department of Health and Human Services, *Bridges Eligibility Policy Manuals*, available at <https://mdhhs-pres-prod.michigan.gov/olmweb/ex/BP/Mobile/BEM/BEM%20Mobile.pdf> (accessed December 4, 2025) [https://perma.cc/JZG2-UV5C].

[4] Michigan Department of Health and Human Services, *Bridges Administrative Policy Manuals*, available at <https://mdhhs-pres-prod.michigan.gov/olmweb/ex/BP/Mobile/BAM/BAM%20Mobile.pdf> (accessed December 4, 2025) [https://perma.cc/4DZW-FLRW].

[5] "SSI" refers to Supplemental Security Income, which is a needs-based federal program administered by the Social Security Administration.

The state plan incorporates the MCCA's protections for support of community spouses. The governing policies include the methodology for calculating the standard community spouse allowance and also provide a judicial mechanism for relief from that default amount. See *BEM 402*, BPB 2025-001 (January 1, 2025). As noted, community spouses in Michigan can obtain a court order that transfers more assets from the institutionalized spouse than the standard spousal allowance permits if certain requirements are met. Article V of the Estates and Protected Individuals Code (EPIC), MCL 700.5101 *et seq.*, authorizes Michigan probate courts to issue such support orders. Specifically, MCL 700.5401(3) provides:

> The court may appoint a conservator or make another protective order in relation to an individual's estate and affairs if the court determines both of the following:
>
> (a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.
>
> (b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money.

Any findings that the probate court makes under MCL 700.5401(3) must be established by clear and convincing evidence. MCL 700.5406(7). If the circumstances in MCL 700.5401(3)(a) and (b) are established, the probate court may enter a protective order directing the transfer of assets or payment of support as long as "the transaction is in the protected individual's best interests." MCL 700.5408(2).

6

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Janet and Jerome Sizick were married for more than 60 years. Before retiring, Jerome spent 38 years working at General Motors as an hourly employee. During that time, Janet stayed home to raise the couple's children. In March 2021, Jerome's health declined. The then 82-year-old was hospitalized and subsequently moved into a nursing home.[6] In May 2021, Jerome began privately paying for his care after his health insurance was terminated. On May 28, 2021, and before Jerome applied for Medicaid to help pay for his care, Janet petitioned the probate court on behalf of her husband for a protective order under MCL 700.5401(3), asking the probate court to transfer all of Jerome's assets and the majority of his income to Janet. In support of this request, Janet explained that Jerome was suffering from multiple health problems, the most significant of which was dementia. She identified her and Jerome's income streams and her estimated future monthly expenses, and she submitted a calculation of Jerome's estimated patient-pay amount with Medicaid coverage.[7] After the petition was filed, Jerome applied for Medicaid. His application was still pending when the probate court held a hearing and issued an order on Janet's petition.

Following the June 21, 2021 hearing on Janet's petition, the probate court ruled from the bench and found by clear and convincing evidence that Jerome was unable to manage his property and business affairs effectively due to physical illness and mental

---

[6] Janet was also hospitalized in March 2021, and was discharged to a nursing home briefly, but she was eventually able to return home with the assistance of home health care services.

[7] At the hearing on her petition in June 2021, Janet testified that each month, Jerome received $1,748.50 from Social Security ($148.50 of which was paid to Medicare for his Part B premium) and $1,351.29 from a pension from General Motors.

deficiency. See MCL 700.5401(3)(a). The court next found that Jerome had dependents in need of money for support and care and that a protective order was necessary to obtain that money and property. See MCL 700.5401(3)(b). The court stated that it would enter a support order for Janet, as permitted by MCL 700.5408. The probate court also concluded that its findings gave it authority under MCL 700.5408 to enter an order transferring Jerome's property to Janet "as support for her." The probate court later incorporated these findings into a written order directing Jerome to transfer all of his assets to Janet and to pay Janet $2,318 per month.

Respondent DHHS appealed this order as of right. In an unpublished per curiam opinion, the Court of Appeals affirmed in part, vacated in part, and remanded for further proceedings. *In re Estate of Sizick*, unpublished per curiam opinion of the Court of Appeals, issued May 26, 2022 (Docket No. 357785) (*Sizick I*). The panel affirmed the probate court's finding that Jerome was unable to effectively manage his property and business affairs due to mental deficiency and physical illness or disability, thereby satisfying MCL 700.5401(3)(a). However, the Court of Appeals held that the probate court erred in finding that Janet was entitled to assets and support from Jerome under MCL 700.5401(3)(b). Explaining that it was bound by *Schroeder*, 335 Mich App 107, the panel "reluctantly" agreed with DHHS's argument that the probate court could not consider whether Jerome's needs could be met by Medicaid in the absence of a final Medicaid-eligibility determination. *Sizick I*, unpub op at 5-6. It also agreed with DHHS that the probate court erred by failing to identify and value the assets being transferred in the protective order. *Id*. at 6-7.

8

On remand, Janet provided additional information on Jerome's and Janet's assets and asked the probate court to conduct an evidentiary hearing in light of the Court of Appeals' decision. At a hearing on October 25, 2022, the probate court again took testimony and then issued a ruling from the bench. Focusing its analysis on MCL 700.5401(3)(b), the probate court recognized that it was required to consider both Janet's and Jerome's needs and resources. The probate court recounted the relevant testimony and exhibits, concluding that, in light of that evidence, Janet had sufficiently established her "need" for the amount requested. After discussing the evidence concerning Jerome's and Janet's assets and their interests in those assets, the court explained that it was again directing Jerome to transfer all of his assets to Janet and to pay Janet $2,318 per month. On December 13, 2022, the probate court issued a second written protective order, styled as an "amended protective order," that reflected its oral ruling from the bench. It also entered a separate order directing that the amended protective order be applied retroactively to June 21, 2021, the date of the prior protective order.

DHHS appealed the orders. In an unpublished per curiam opinion, the Court of Appeals again affirmed in part, vacated in part, and remanded for further proceedings. *In re Estate of Sizick*, unpublished per curiam opinion of the Court of Appeals, issued January 18, 2024 (Docket No. 364321) (*Sizick II*). Echoing the panel in *Sizick I*, the Court of Appeals concluded that the probate court abused its discretion by finding that the requirements of MCL 700.5401(3)(b) were satisfied. *Id*. at 8, 10. The panel additionally concluded that the probate court erred by not using up-to-date information about the value of the assets being transferred to Janet and Jerome's interest in those assets. *Id*. at 16.

9

Finally, the Court held that the probate court erred by backdating its December 2022 order to June 21, 2021. *Id*. at 18-19.[8]

Janet applied for leave to appeal in this Court, on behalf of Jerome, on April 10, 2024. On April 21, 2024, while the application was pending, Jerome died. At the time of his death, Jerome owed a balance of $125,231 to his nursing home, which the nursing home subsequently claimed against his estate. Then Chief Justice Clement granted Janet's motion to substitute Julie Gries, personal representative of the Estate of Jerome E. Sizick, as the named petitioner-appellant. We initially ordered the parties to file supplemental briefs on whether Jerome's death rendered this appeal moot.

After receiving this briefing, we ordered oral argument on the application,[9] directing the parties to address

> (1) whether this appeal has been rendered moot as a result of the death of Jerome E. Sizick; (2) if so, whether an exception to the mootness doctrine is applicable here; and (3) if the appeal is not moot or if a mootness exception applies, whether *In re Estate of Schroeder*, 335 Mich App 107 (2020), wrongly held that a probate court, in evaluating a petition for a protective order of spousal support under MCL 700.5401, cannot consider whether Medicaid benefits will be available to a protected individual in measuring his or her needs prior to a Medicaid eligibility determination. [*In re Estate of Sizick*, ___ Mich ___, ___; 15 NW3d 593, 593 (2025).]

---

[8] The Court of Appeals subsequently denied petitioner's motion for reconsideration. *In re Estate of Sizick*, unpublished order of the Court of Appeals, entered February 28, 2024 (Docket No. 364321).

[9] On October 5, 2025, before this Court heard oral arguments in this case, Janet also died. Because Janet is not a party to this appeal, her passing does not affect our decision.

## III. STANDARD OF REVIEW

This Court reviews de novo questions of law, such as mootness. *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018). A probate court's factual findings are reviewed for clear error, and its "dispositional rulings, including a decision to enter a protective order, are reviewed for an abuse of discretion[.]" *In re Vansach Estate*, 324 Mich App 371, 385; 922 NW2d 136 (2018). Questions of statutory interpretation are reviewed de novo. *McQueer v Perfect Fence Co*, 502 Mich 276, 285-286; 917 NW2d 584 (2018). "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018).

## IV. JEROME'S DEATH DOES NOT RENDER THIS APPEAL MOOT

As a threshold matter, we must determine whether Jerome's passing has rendered this appeal moot. The principal duty of this Court is to decide actual cases and controversies. *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010); *Anway v Grand Rapids R Co*, 211 Mich 592, 610; 179 NW 350 (1920). Thus, as a general rule, " 'this Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before' it." *Richmond*, 486 Mich at 34, quoting *Federated Publications, Inc v Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002); see also *East Grand Rapids Sch Dist v Kent Co Tax Allocation Bd*, 415 Mich 381, 390; 330 NW2d 7 (1982).

DHHS denied Jerome's first Medicaid application shortly after *Sizick I* was decided, and he requested a fair hearing with the Michigan Office of Administrative Hearings and

11

Rules (MOAHR). In late 2022 or early 2023, Jerome submitted a second Medicaid application that remained pending until *Sizick II* was decided, at which time DHHS denied the application. Jerome again requested a fair hearing with MOAHR. The two MOAHR appeals of the denials of Jerome's Medicaid applications have been consolidated and are being held in abeyance pending the outcome of this case. In DHHS's view, this appeal is moot because the ultimate relief sought by petitioner is so speculative that a live controversy no longer exists. We disagree.

## A. LEGAL BACKGROUND

Several legal principles are relevant to the present mootness inquiry. To begin, Medicaid applicants have a right to a full evidentiary hearing in front of an impartial hearing officer. *BAM 600*, BPB 2025-017 (July 1, 2025), p 1. A fair hearing before an administrative law judge (ALJ) from MOAHR includes the right to present witnesses, the right to confront and cross-examine adverse witnesses, and the right to be provided with the reason the action was taken and the documents that were used to make the determination. See 42 CFR 431.242 (2024). The fair-hearing process also affords Medicaid applicants the right to a timely decision. See *BAM 600* at 11. MOAHR's ALJs are neutral decision-makers who have broad fact-finding and decision-making authority. See *Wiesner v Washtenaw Co Community Mental Health*, 340 Mich App 572; 986 NW2d 629 (2022) (holding that a local state agency lacked the authority to appeal an ALJ decision from MOAHR in favor of additional Medicaid funding).

Further, Medicaid benefits can be awarded retroactively, including to deceased individuals. See, e.g., 42 USC 1396a(a)(34). Michigan's Medicaid policies expressly

provide for retroactive reimbursement when a DHHS Medicaid-benefits denial is overturned on appeal by DHHS, an ALJ, or a court. *BAM 600* at 22-23. Relevant here, when a hearing request based on a Medicaid denial is received, DHHS must provide an applicant with a DHS-333 notice, which explains the potential for reimbursement of paid medical expenses after a denial is overturned. *Id*. at 22. To be eligible for reimbursement, the payment must be for a Medicaid-covered care or service that was provided on or after February 2, 2004. *Id*. DHHS policies further explain:

> A client may be eligible for reimbursement of medical expenses paid to providers for a retroactive eligibility period Medicaid-covered care or service. A medical payment for care or services received in a client's retroactive period may be reimbursable if it is made between a MDHHS denial and 10 days after the date an eligibility determination is issued as a result of the hearing request.

> A client may also be eligible for corrective action reimbursement of medical expenses paid to providers for care or services received after the MDHHS application. The corrective action period covers medical expenses paid to providers between the date a MDHHS administrative hearing request is filed and 10 days after the date an eligibility determination is issued as a result of the hearing request. The client must show that the original denial was incorrect for corrective action reimbursements. [*Id*. at 23.]

Thus, if a Medicaid applicant succeeds in having DHHS's denial of benefits overturned on appeal, the applicant is eligible for reimbursement of Medicaid-covered expenses incurred after the initial denial date.

## B. APPLICATION

In light of the pending MOAHR proceedings, we hold that this appeal is not moot. There is a live controversy here because reinstating the protective order will have a " 'practical legal effect.' " *Richmond*, 486 Mich at 34 (citation omitted). Jerome requested

fair hearings on DHHS's denials of his two Medicaid applications. Those consolidated appeals are unresolved; MOAHR has held the cases in abeyance pending the outcome of this case. If Jerome prevails in those appeals, his estate will be entitled to retroactive Medicaid benefits on his behalf, see *BAM 600* at 23, and those benefits would offset the considerable debt that his estate owes to his nursing home.

In addition, Jerome's Medicaid applications were denied due to DHHS's determination that his countable assets exceeded the resource limit. The protective orders issued by the probate court below operated to reduce Jerome's countable assets almost entirely. Reinstating the 2022 protective order would enable the MOAHR ALJ to consider it during the fair-hearing proceedings.[10] The protective order could therefore influence, or even be dispositive evidence in, the MOAHR proceedings. Indeed, MOAHR's abeyance of Jerome's consolidated cases indicates that the outcome of this proceeding will be given at least some weight in the ultimate resolution of those cases.

We decline to speculate as to the effect of the reinstated protective order on Jerome's MOAHR appeals or what reimbursement Jerome will be owed if he prevails in those proceedings. We simply hold that this appeal is not moot because reinstating the protective order will have a legal effect on the pending MOAHR proceedings.

V. THE CORRECT STANDARD UNDER MCL 700.5401(3)

The remaining question in this case, therefore, is whether a probate court can properly consider whether Medicaid benefits will be available to a protected individual

---

[10] DHHS conceded during oral argument before this Court that the ALJ would consider a reinstated protective order when assessing the pending appeals.

14

prior to an eligibility determination when issuing a protective order under MCL 700.5401(3). We hold that it can.

## A. LEGAL BACKGROUND

As noted, before a protective order can issue in a probate case, MCL 700.5401(3)(b) requires the probate court to find as follows:

> The individual [seeking the order] has property that will be wasted or dissipated unless proper management is provided, or *money is needed for the individual's support, care, and welfare or for those entitled to the individual's support*, and that protection is necessary to obtain or provide money. [Emphasis added.]

While we have not previously addressed this provision in the Medicaid context, the Court of Appeals has considered it in two published cases.

In *Vansach*, 324 Mich App at 395-396, the Court of Appeals vacated two protective orders that awarded the community spouses 100% of the monthly incomes of their respective institutionalized spouses, who were receiving Medicaid benefits. *Id*. at 376-377. The Court of Appeals recognized that a protective order for the support of a community spouse can be granted only if the community spouse shows a "need—not merely a desire[—]to maintain a current standard of living without regard to the other spouse's circumstances." The panel explained that "[w]hether the community spouse is 'entitled' to 'support' will depend on all the facts and circumstances, including the incapacitated individual's financial means and ability to provide assistance." *Id*. at 396. The Court concluded that "the obligation to support a spouse is contingent on the assumption that the spouse providing support has sufficient financial ability to provide that assistance." *Id*. at 395. Specifically, the panel took issue with "leav[ing] the incapacitated individual entirely

15

destitute," as doing so meant that they could not satisfy their patient-pay obligations under Medicaid, *id*. at 396-397, and held that a probate court must also consider "the institutionalized [spouse's] needs and circumstances in light of Medicaid," *id*. at 399. Thus, "a support order under EPIC cannot be used to impoverish an institutionalized spouse as an end-run around Medicaid." *Id*. at 401. The *Vansach* panel emphasized that the petitions in the cases at issue "were made *after* the initial Medicaid determinations had been made" and that it was not addressing "attempts to use protective proceedings . . . *before* the initial Medicaid determination for Medicaid-planning purposes." *Id*. at 394 n 14 (first emphasis added).

Then, in *Schroeder*, 335 Mich App at 122, the Court of Appeals relied on *Vansach* in opining that the "probate court's consideration of Medicaid and patient-pay amounts in assessing need" was "problematic" "when no Medicaid-eligibility and patient-pay determinations had been made at the time of the court's rulings." The Court of Appeals explained:

> We understand and appreciate that patient-pay amounts can be estimated before the submission of a Medicaid application and a Medicaid-eligibility determination. But in assessing the "need" for money for a person's support and care under MCL 700.5401(3)(b) on the basis of Medicaid-related circumstances, there must actually be Medicaid determinations regarding eligibility and patient-pay amounts. [*Id*. at 123.]

The *Schroeder* panel concluded that, by considering needs in the context of Medicaid-related circumstances even though the institutionalized spouses in the consolidated cases at issue were not receiving Medicaid benefits and were awaiting Medicaid-eligibility determinations, the probate court "put[] the cart before the horse." *Id*.

16

## B. ANALYSIS

To resolve the question of whether the probate court can consider the availability of Medicaid benefits in its needs analysis before DHHS has made a Medicaid-eligibility determination, we begin with the text of the statute. *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 34; 878 NW2d 799 (2016). MCL 700.5401(3) authorizes the probate court to enter a protective order if the court determines certain conditions are present. Only one of those conditions is relevant here—that "money is needed for the individual's support, care, and welfare or for those entitled to the individual's support[.]" MCL 700.5401(3)(b). This provision explicitly directs the probate court to consider two sets of interests: the interests of the individual to be protected and the interests of any dependents. Accordingly, as the *Vansach* Court recognized, "it cannot reasonably be expected that one spouse should become impoverished in order for the other spouse to maintain his or her standard of living." *Vansach*, 324 Mich App at 395. The statute does not instruct the probate court to prioritize one set of needs above the other. Instead, it contemplates an individualized assessment of the needs and circumstances of each person. And because any protective order issued must account for those individuals' ongoing support needs for the foreseeable future, this assessment necessarily involves a prospective analysis. Indeed, the protective actions authorized by EPIC are inherently prospective. See, e.g., MCL 700.5408(1) (requiring consideration of the protected individual's foreseeable needs). Given this, we conclude that nothing in the statute forecloses consideration of the availability of Medicaid benefits, even if DHHS has not yet issued an eligibility determination.

Our conclusion is consistent with the approach articulated in *Vansach*, 324 Mich App at 395-396. There, the Court of Appeals emphasized that MCL 700.5401(3)(b)

17

requires careful consideration of both spouses' respective interests and needs, explaining that "a finding that money is needed for a spouse entitled to support from the protected individual requires consideration of the requesting spouse's needs and resources as well as the protected individual's needs and circumstances." *Id*. at 395. While we acknowledge that *Vansach* involved an institutionalized spouse who had already received a Medicaid-eligibility determination, we do not think that this question turns on whether DHHS has acted on a party's Medicaid application.[11] Rather, the proper analysis under MCL 700.5401(3)(b) requires consideration of each individual's foreseeable support needs, including whether they are—or will be—eligible for Medicaid benefits.

Consequently, the Court of Appeals in *Schroeder* erred by holding that probate courts cannot consider "Medicaid-related circumstances" under MCL 700.5401(3)(b) if the institutionalized spouse is "not receiving Medicaid benefits" and is "awaiting [a] Medicaid-eligibility determination[]." *Schroeder*, 335 Mich App at 123. Put simply, no such requirement is included in the statute. See *South Dearborn Environmental Improvement Ass'n*, 502 Mich at 360-361. Indeed, the *Schroeder* panel's insistence that "there must actually be Medicaid determinations regarding eligibility and patient-pay amounts" is directly contradicted by its acknowledgment that "patient-pay amounts can be estimated before the submission of a Medicaid application and a Medicaid-eligibility determination."

---

[11] DHHS's policies require approval or denial within 45 days for standard applications and 90 days for applications in which disability is an eligibility factor. *BAM 115*, BPB 2025-022 (October 1, 2025), p 16. The Medical Review Team can extend the time periods for a decision by 60 days. *Id*. While the timing of DHHS's denials of Jerome's Medicaid applications is not directly at issue in this appeal, we note that DHHS declined to act on Jerome's applications until after the Court of Appeals vacated the protective orders in *Sizick I* and *Sizick II*, a period of time in excess of the time allowed under DHHS policy.

18

*Schroeder*, 335 Mich App at 123. Given the existence of a clearly defined methodology for accurately determining whether an individual will be eligible for Medicaid, see generally *BEM 400*, the requirement that such a determination already be made in order for the probate court to consider it is arbitrary. By restricting the probate court's analysis to "the [Medicaid-related] circumstances as they actually exist" when a protective order is requested, *Schroeder*, 335 Mich App at 123, *Schroeder* undermines the MCCA's protections against impoverishment for community spouses. See *Wisconsin Dep't of Health & Family Servs*, 534 US at 480 (explaining that the MCCA was enacted "to protect community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance"). Specifically, *Schroeder* only allows courts to consider Medicaid-related circumstances if the institutionalized spouse's nonexempt assets are already diminished to the point that the institutionalized spouse is under the eligibility threshold for Medicaid. Therefore, the MCCA's judicial mechanism allowing assets transferred via court order to be excluded from an institutionalized spouse's eligibility determination is effectively nullified. See *BEM 402*; 42 USC 1396r-5(d)(5).

We are not persuaded by DHHS's contention that overturning *Schroeder* will allow anyone, regardless of income, to obtain a protective order of spousal support and force taxpayers to pay for nursing-home care through Medicaid. The approach articulated in *Vansach* requires the probate court, in assessing MCL 700.5401(3)(b), to evaluate both spouses' ongoing support needs and consider each of their relative financial circumstances, including whether the community spouse has sufficient assets and income to support themselves. *Vansach*, 324 Mich App at 395-396. A finding of need is foreclosed if the community spouse seeks support only to maintain a certain standard of living. See *id*. at

19

397-398 ("[E]ven with the enactment of the spousal-impoverishment provisions, Medicaid provides no guarantee that a community spouse will enjoy the same standard of living—even if reasonable rather than lavish by some lights—that he or she enjoyed before the institutionalized spouse entered a nursing home.") (quotation marks and citation omitted). The availability of Medicaid benefits is only one of many considerations that are relevant under MCL 700.5401(3)(b), which also requires consideration of the couple's assets, their interests in those assets, and their respective incomes.[12]

Because *Schroeder* was wrongly decided, we overrule it. We further hold that the correct analysis under MCL 700.5401(3)(b) requires consideration of both spouses' ongoing and foreseeable support needs, see *Vansach*, 324 Mich App at 395-396, including whether Medicaid benefits will be available to the institutionalized spouse under DHHS's clearly defined eligibility parameters.

## C. APPLICATION

With the appropriate framework in mind, we now turn to the case at hand. The Court of Appeals relied on *Schroeder* to reach its conclusion that the probate court erred in its analysis of the Sizicks' respective needs under MCL 700.5401(3)(b) and thus abused its discretion by issuing the 2022 protective order. For the reasons discussed above, we disagree with this conclusion. Therefore, we hold that the probate court properly considered Jerome's and Janet's respective needs.

---

[12] Moreover, a person seeking a protective order must establish by clear and convincing evidence, MCL 700.5406(7), both that there is a need for protection under MCL 700.5401(3)(b) *and* that "[t]he individual is unable to manage property and business affairs effectively . . . ." MCL 700.5401(3)(a).

We also hold that there was sufficient evidence presented at the 2022 hearing to support the transfer of assets and award of support ordered by the probate court. On remand following the Court of Appeals' decision in *Sizick I*, Janet submitted additional evidence in support of her renewed request for a protective order, and the probate court held another evidentiary hearing. The evidence in the record includes information regarding all of Janet and Jerome's assets, who had ownership of those assets, and the alleged value of those assets, as well as the amount of Jerome's and Janet's respective incomes.

Janet testified that her current monthly budget had increased to approximately $3,800 due to inflation and increased care needs. She explained that she now needed assistance with household tasks for two to three hours a day at a rate of $20 to $25 per hour, and that her out-of-pocket costs for Jerome's prescription drugs averaged approximately $100 per month. Janet also testified that she was paying a portion of Jerome's nursing home costs, as he was still awaiting DHHS action on his pending Medicaid cases. Specifically, she testified that she paid the nursing home $4,405 in May 2021 as well as $573 per month in 2021 and $654 per month in 2022. These payments were "private pay that would not have been covered by Medicaid," with the monthly payments roughly corresponding to the patient-pay amount that Jerome would owe if he were receiving Medicaid benefits. Jeremy Geiersbach, the director of billing services for the nursing home where Jerome resided, testified that Jerome had an outstanding bill because his Medicaid case was never processed. According to Geiersbach, at the time of the hearing in October 2022, Jerome's amount due was $126,719, and Jerome's amount due the following month would be $134,669.

In its oral decision on the record, the probate court recognized that under MCL 700.5401(3)(b), it was required to consider both Janet's and Jerome's needs and resources. The probate court recounted the evidence that it had heard and the exhibits that were entered into evidence, including the evidence regarding Janet's monthly expenses, before concluding that Janet had sufficiently established her "need" for the support amount requested. The probate court also recounted the evidence about Jerome and Janet's assets and their interests in those assets before ordering that all assets be transferred to Janet. The probate court considered the availability of Medicaid benefits for Jerome in reaching this conclusion, but we note that this was one of many relevant considerations that the court included in its needs analysis. The 2022 protective order is consistent with *Vansach* because it would not have impoverished Jerome.[13] See *Vansach*, 324 Mich App at 395. We detect no error or abuse of discretion in the probate court's findings and conclusions under MCL 700.5401(3)(b).

In *Sizick II*, the Court of Appeals reiterated its holding from *Sizick I* that the probate court was foreclosed from considering the availability of Medicaid benefits under *Schroeder*'s erroneous analysis and again found the probate court's needs analysis lacking. Without *Schroeder*, that holding cannot stand. The Court of Appeals' own discussion contradicts its conclusion that the probate court's findings and analysis failed to account

---

[13] The order grants Janet a monthly income allowance in the amount of $2,318, leaving Jerome with the remainder of his roughly $3,000 in combined monthly income from Social Security and his pension—approximately $682. The record shows that the nursing home provided Jerome with all necessary care, and he had no other individual expenses. Thus, the 2022 protective order would have left Jerome enough funds to support his needs, as required by *Vansach* and EPIC.

22

for Jerome's needs. The panel emphasized Janet's small monthly payments for Jerome's care and his significant outstanding nursing home bill but, consistent with *Schroeder*, failed to include the relevant Medicaid context. A nursing home representative testified that Jerome had an outstanding bill because his Medicaid case was never processed. And Janet's monthly payments were roughly equivalent to the patient-pay amount that Jerome would be responsible for under Medicaid. The panel further observed that an exhibit introduced at the second hearing "show[ed] that Jerome's expenses at the nursing home came out to $265 per day," but it did not attempt to explain how Jerome would be able to cover the full cost of his care without receiving Medicaid benefits or that Jerome's actual monthly payments were much lower, consistent with what he would be paying under Medicaid. *Sizick II*, unpub op at 15.

We also disagree with the Court of Appeals' conclusion that the probate court erred by not using up-to-date information about the value of the couple's assets and their respective interests in those assets. The panel referred to only one example:

> The probate court had evidence before it that Jerome owned 63 shares of Prudential stock, and accordingly identified this Prudential stock as an asset in which Jerome had interest. Yet the evidence on which the probate court relied for this finding was from 2019, and Gries testified that the Prudential stock had since been transferred to Janet. Thus, by relying on outdated information, the probate court ordered Jerome to transfer an asset to Janet that he did not possess. [*Id*. at 18.]

The Court of Appeals did not suggest, nor does the record show, that the value of any of the couple's assets had substantially increased or decreased since the first evidentiary hearing. As discussed above, the probate court considered multiple changed circumstances and figures at the 2022 hearing. Moreover, the Court of Appeals acknowledged that the

23

"outdated information" was at most only a few years old. *Id*. There is no indication that requiring reappraisals of all assets would change the analysis. Moreover, the protective order directs Jerome to transfer 100% of his assets to Janet, so any asset she already owns would be unaffected. Therefore, we hold that any error here is harmless.[14]

## D. SCOPE OF REMEDY

On remand, we direct the probate court to reinstate only the 2022 protective order.

In its application and supplemental briefing, petitioner asks this Court to reverse both the Court of Appeals' decision vacating the 2021 protective order and its later decision vacating the 2022 protective order. However, petitioner does not even discuss whether this Court has authority to reinstate the first order, which was previously vacated by the Court of Appeals in a decision that was not appealed here. Moreover, petitioner does not attempt to argue that the Court of Appeals erred in holding that the probate court lacked authority to enter the order directing that the 2022 protective order be applied retroactively to the date of the 2021 protective order. As a result, we decline to take any action as to the 2021 protective order. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

## VI. CONCLUSION

We hold that the probate court may consider the availability of Medicaid benefits before DHHS has made a Medicaid-eligibility determination as part of its needs analysis under MCL 700.5401(3). We therefore overrule *Schroeder*, 335 Mich App 107, to the extent it is inconsistent with this holding. We further hold that the Court of Appeals erred

---

[14] We note that while failing to use up-to-date information may amount to reversible error in some cases, it does not here.

24

by vacating the 2022 protective order, and we reverse its judgment in that regard. We therefore reinstate the 2022 protective order and remand the case to the probate court for further proceedings consistent with this decision. We do not retain jurisdiction.

Megan K. Cavanagh
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood
